Lecompte vs. Wash et al.

LECOMPTE vs. WASH ET AL.

9 551
96 155
9 551
47a 549

1. The stat. of West. 2, concerning dower, was never in force in the Territory of Missouri; its provisions were incorporated into the law of this State in 1825.

2. A petition for the assignment of dower, alledging that the husband died *seized* of the land, and that his estate was an estate of inheritance, sufficiently describes the character of the husband's title, as a freehold of inheritance.

3. Where there are several defendants in a real action, as in a petition for the assignment of dower, a verdict in favor of one defendant upon his separate plea, will not avail another defendant, against whom a judgment by default has been rendered.

4. Where the verdict, upon the issues joined on several pleas in bar to a petition for dower, found that the petitioner had left her husband, and lived in adultery, with one L., but had not lft her husband and lived in adultery with L., since 5th Feb. 1825, and did not find whether the petitioner had ever been *reconciled* to her husband, the court could render no judgment, but must award a repleader.

ERROR to St. Louis Court of Common Pleas.

LAWLESS, HILL & HAMILTON, for Plaintiff.

SPALDING, for Defendants.

POINTS.

1. The question of the sufficiency of the first additional plea does not arise in this case; and, even if it did, the plea embraces a good defence. 3 Bac. Abr. 384; Rev. Code 1825, p. 334, sec. 7; do. p. 500, sec. 13 And, by the Spanish laws, the widow forfeited her right to the acquisitions made by the husband during marriage, by elopement and adultery. See Dupondan's opinion.

2. The montion of Wash was rightly sustained, as the success of his co-defendant on the issue enures to his benefit.

3. Under the third error assigned, nothing can be taken advantage of but error in the record proper. The failure by the court to sustain a motion, or any error committed by it on the trial, cannot be noticed under this assignment of errors.

NAPTON, J., delivered the opinion of the court.

Hyacinth Lecompte, and his wife Cecile, filed their petition in the circuit court of St. Louis, for an assignment of dower to said Cecile, in the lands of her first husband, Antoine Bisette. The petition stated

that the maiden name of the demandant was Cecile Compare; that in the year 1806, she married Antoine Bisette; that said Bisette was seized of an estate of inheritance in the undivided third part of a lot of ground near St. Louis, two and a half by forty arpens, in the Big Prairie, bounded by lands of the widow Dodier, and of the widow Hebat; that said Bisette, as the demandant was informed, had sold said land in his life-time, but the demandant Cecile had never relinquished her dower; that the said Antoine died in May, 1825, leaving one child, Victoria Bisette; that his widow, the demandant, married Hyacinth Lecompte in March 1829; that defendants, Robert Wash, Brown Cozzens, and Benj. Ames, have entered on satd lands, and deforced said Cecile out of her dower, &c., &c.

To this petition, Cozzens and Ames pleaded seperately four pleas, and at the same term, a judgment by default was entered against Wash.

Replications were filed to the first and second pleas, and motions to strike out the third and fourth.

At the November term, 1835, motion was made by Wash to set aside the judgment by default, and it was set aside accordingly. At the February term, 1836, Wash filed several pleas, and Cozzens and Ames filed four additional pleas, their former pleas having been stricken out or withdrawn. These additional pleas were,

1. That after the marriage, said Cecile had voluntarily left the said Bisette, and went away, and continued to live in adultery with the said Hyacinth Lecompte.

2. That during said marriage, said Cecile and said Lecompte compelled the said Antoine to leave the house, and that from that time until the death of said Antoine, she, the said Cecile, voluntarily lived in adultery with the said Hyacinth Lecompte.

3. That after the marriage, and during the life of said Antoine, and after the fifth day of February, in the year 1825, she, the said Cecile, voluntarily left the said Antoine, and went away, and continued to live in adultery with the said Lecompte.

4. That after the marriage, &c., she, the said Cecile, voluntarily left the said Antoine, and went away, and continued with Hyacinth Lecompte an adulterer, until the death of said Antoine, and until after the fifth day of Feb. 1825.

The first, third and fourth of these additional pleas were traversed, and issues taken thereon. A demurrer was filed to the second; which demurrer being overruled, a replication was then filed to that plea, traversing it and taking issue.

No replications being filed to the pleas of Wash, judgment was given,

and the case taken by appeal to the supreme court, where the judgment by default against Wash was re-instated.

At this stage of the proceedings, the case was sent to the court of common pleas. On the 29th Nov. 1842, a jury was called to enquire whether the demandant was entitled to dower in the premises in possession of Wash, who found she was entitled to one-ninth of 53 11-100 acres. On the succeeding day, a trial was had on the issues made by the pleas of Cozzens and Ames; and the defendants had a verdict on the first, and the demandant on the second, third and fourth pleas. The demandant thereupon moved [for a judgment, *non obstante veredicto*, upon the ground that the first issue was immaterial, and the verdict for her on the last issues authorized a judgment. This motion was overruled. The demandant then moved for a new trial, which was also overruled. The demandant then moved in arrest of judgment, which motion was also overruled. Wash moved in arrest of judgment, because the petition of the plaintiff was insufficient, and because there was upon the record a bar to dower in any lands of the deceased, found by the verdict of the jury on the trial of the issues between the plaintiff, and the other defendants. This motion was sustained.

The principal question involving the merits of this case, is whether the Statute of Westminster Second, 13 ed. 1 ch. 34, was introduced into the Territory of Missouri, by the passage of the act of the 19th January, 1816. The 34th chapter of the Stat. West. 2, provided, that if a woman voluntarily leave her husband, and go away, and continue with an adulterer, she shall forever lose her action to demand her dower, that she ought to have of her husband's lands, if she be convicted thereof, unless her husband willingly, and without the coercion of the church, be reconciled to her, and permit her to live with him, in which event she shall be restored to her action. 2 Co. Inst. 435. This was not the Common Law. 2 Inst. 435. The act of Jan. 19, 1816, enacted that the Common Law of England, which is of a general nature, and all statutes made by the British Parliament in aid of, or to supply the defects of the said common law, made prior to the 4th year of James I, and of a general nature, and not local to that kingdom, which said common law and statutes are not contrary to the laws of this territory, and not repugnant to or inconsistent with the constitution and laws of the United States, should be in force in this territory.

Was the stat. of West. 2, made in aid of, or to supply the defects of the common law? Whether a statute has, in the opinion of the court, attained its avowed purpose, or whether its avowed purpose be beneficial or not, are not the questions which determine whether the statute

is embraced by the provisions of this act of 1816. The legislature did not design that the courts should decide between the relative merits of the common law and the statutory amendments thereof, but doubtless designed to put into operation all such statutes of the British Parliament as purported or professed to be in aid of the common law. The stat. of West. 2 was doubtless of this character, and the objection founded on this point is not tenable.

But the "common law and statutes" must not be "contrary to the laws of this territory." It is necessary then to inquire what were the laws of this territory on this subject when this statute of 1816 was enacted.

In 1807 the first provisions were made on the subject of dower, under the head of wills, descents and distributions. By the 6th section of that law, it is provided that after the payment of debts, the widow of a man who leaves issue shall have a third of the real estate and slaves of decedent for her life, and a third of the personalty *absolutely*. Where the decedent left no issue, she was entitled to one-half of his lands and slaves *during life*, and, upon a certain contingency, one-half of the personalty *absolutely*. And this was declared to be in lieu of dower at common law.

By the act of July 7, 1807, a mode was provided by which the wife could release her dower; and by an act, which passed 18th June, 1808, a provision was made for the widows quarantine, and a mode pointed out by which an assignment of her dower could be obtained.

The act of Jan. 21, 1815, embodied in its provisions all the previous enactments on the subject, making, however, some important modifications of the nature and extent of this estate. By this last law, lands sold under execution, and lands sold in pursuance of a decree of court to foreclose mortgages, are exempt from dower; and the widow, where her husband has died without issue, gets one-half of her husband's lands *in fee simple*, and one-half of his slaves *absolutely*, and all the slaves which came by her, and all the personalty, after the payment of debts. This act also embraced both the previous laws regulating the mode of relinquishing dower, and the proceedings for having it assigned or admeasured.

This was the condition of the law on this subject when the act of 1816 was passed. In 1825 the whole subject was again taken up by the legislature, and, amongst other provisions, this one, taken from the St. of West. 2, by which adultery and desertion were declared a bar to dower, was inserted.

It is very evident from this glance at the legislation on this subject,

that dower, as it was known and defined at the common law, never did exist in this territory. Previous to 1816' the statute laws of the territory had covered the subject and declared what dower was, and the dower so declared varied most essentially from that which existed at common law. The subject having already been disposed of and provided for, the introduction of the common law, and the British statutes passed in aid thereof, did not repeal or modify, or in any respect alter or affect the rights of persons as they were recognized by our territorial legislation. The enactments of the territorial legislature, and the statute of Westminister Second are not consistent with each other; the enactments having declared *who* should be endowed, and how they should be endowed, and of what. The statute of 13 Edw. 1, creates a temporary bar to the dower, and makes certain acts on the part of the wife a forfeiture of her rights. Whether this statute amended or improved the common law, it at all events applied to a subject previously provided for by territorial legislation, and therefore did not become the law of this State' until 1825, when the legislature expressly enacted it.

A variety of questions have arisen in this case, growing principally out of the condition of the pleadings. The one we propose to examine first is the action of the court on Wash's motion to arrest the judgment. This motion was based upon two grounds; *first*, the insufficiency of the demandants petition; and, *second*, the finding of the jury upon the issues between the demandant and his co-defendants, by which it appeared that she was not entitled to dower in any lands.

It seems to be settled that after a judgment on demurrer, there can be no motion in arrest for any exception that might have been taken in arguing the demurrer: the reason of which is stated to be that the matter of law having been already settled by the solemn determination of the court, they will not afterwards suffer any one to come as *amicus curiæ*, and tell them that the judgment given on mature deliberation is wrong, 2nd Tidd. 947, Cresswell vs. Packhan; 6 Taun. 660, Freeman & Snowden vs. Cambden; 7 Mo. R. 298. The principle, however, does not seem to be applicable to the present case. For though the defaulted defendant may be in no better condition, in relation to this subject, than the co-defendants to whose second joint and several plea the plaintiff demurred, yet the co-defendants, whose plea had been sustained by the overruling of the demurrer, had it not in their power, if that demurrer was considered as settling the sufficiency of the petition, to abide by that demurrer, with a view to have the question passed upon by this court. They, therefore, must either have a right to move in arrest, and thereby have the judgment of the court directly on the suf-

ficiency of the petition, or what, in effect, is the same thing, they have a right to consider the point, if raised by the demurrer, without the aid of a motion in arrest, as a point not waived on their part, by the action of the plaintiff or demandant in withdrawing the demurrer, and pleading over. In either point of view the sufficiency of the petition is a question for this court.

The objection taken to the petition is, that the nature of the husband's title is not set forth so that the court can see whether it be of a dowable interest. The petition alleges that the husband died seized of the lands described therein, and that his estate was an estate of inheritance. The term *seisen* sufficiently explains the character of the title as a *legal* one, and if it be necessary, in any case, to set out in the petition the nature of the husband's title, whether by grant, concession, survey, &c., it can only be in cases where the interest of the husband was such as, at the common law, would not have entitled the wife to dower. In such case it might be necessary to set forth the nature of the husband's title, so that the court might decide whether it was of a character to make the wife dowable. Here no such difficulty presents itself: the interest of the husband was a freehold of inheritance, of which he is represented to have died seized.

Our opinion of the sufficiency of this petition renders unnecessary the consideration of the question, somewhat discussed at the bar, in relation to the effect of a judgment by *default* under the provisions of our statute of *jeofails*. We observe that, in the late revision, the judgment by default is not enumerated among those affected by the operation of the act, as it was in the revised code of 1835; and the question, therefore, is not likely to be of any practical importance hereafter.

The remaining reason for arresting the judgment, at the motion of Wash, and the one which probably influenced the action of the court of common pleas, was the finding of the jury on the pleas of adultery and abandonment, from which it appeared by the record that the demandant was not entitled to any dower according to the construction which was given to that finding, and which will be considered hereafter. In Coke Litt. 125 b, the law is thus stated: "In a plea personal, if one plead a plea which excuseth himself only, and the other plead another plea which goeth to the whole, the plea which goeth to the whole shall be first tried; for if that be found, it maketh an end of all, and the other defendant shall take advantage hereof, because the discharge of one is the discharge of both. But in a plea real it is otherwise; for every tenant may lose his part of the lands. As if a *precipe* be brought, as heir

to his father against two, and one plead a plea which extendeth but to himself, and the other pleads a plea which extendeth to both, as bastardy in the demandant, and it is found for him, yet the other issue shall be tried; for he shall not take advantage of the plea of the other; because one joint tenant may lose his part by his misplea."

In an action on contract against two or more, if one defendant is defaulted, and the others, under the general issue, set up and maintain a defence which clearly negatives the plaintiff's right to recover against either of the defendants, and shows that he has no cause of action, the plaintiff is entitled to judgment against the defendant who is defaulted. Bowman vs. Noyes, 12 N. H. R. 311. But this is not the case, it seems in real actions: for it is laid down that if, in dower, one pleads a bar which goes to the whole, and the other says he is, and always has been ready to render dower, the demandant may recover immediately against the latter, and shall not be compelled to await the trial of the first issue. So in *formedon* against two, if one pleads bastardy, and the other confesses the action, the demandant may have judgment for a moiety. Roscoe on Real Prop. 233.

Upon these principles, then, the court could not give Wash the benefit of the pleas set up by his co-defendants, Ames and Cozzens, supposing the verdict upon those pleas to have entitled them to a judgment. And this brings us to the consideration of the motion for a judgment *non obstante*, by the demandant.

The finding of the jury, on the several issues presented to them, established the following facts :

1. That Cecile Lecompte, the demandant, voluntarily left Bisette, her husband, and went away, and lived in adultery with Lecompte.

2. That she did not continue in adultery with said Lecompte until the death of Bisette.

3. That after the 5th February, 1825, she did not voluntarily leave her husbaud, and go away, and continue in adultery with said Lecompte.

4. That she did not voluntarily leave her husband, and go away, and continue with Lecompte, an adulterer, until the death of her said husband, and until after the 5th Feb., 1825.

The condition of the wife at the death of the husband, when her inchoate title to dower is consummate, must determine her rights; for where the husband *aliens* his land, and then the wife is attainted of felony, she is disabled; but if she be pardoned before the death of her husband, she shall be endowed. Co. Litt. 33 a. "Elopement is only a

temporary bar, until reconcilement, which being accomplished, t'ie temporary bar ceaseth." Mennile's case, 13th Co. 23.

If the adultery and desertion of the demandant commenced or continued after the 5th Feb., 1825, without reconciliation before the death of the husband, her right to dower was forfeited by the law, as it stood at the time of her husband's death.

In looking at the verdict of the jury, it is obvious that the court of common pleas could not have entered judgment *non obstante,* as the demandant desired. The finding on the second, third and fourth issues did not require an inference that the said Cecile Lecompte did not continue in adultery and abandonment from her husband after the 5th of Feb., 1825, though it is expressly found that she did not continue so with the said Lecompte. But whilst a judgment could not, with any propriety, be entered for the demandant, because of the verdict on the second, third and fourth issues, neither could the court, without overlooking this finding on the last three issues, be authorized to give judgment on the first alone. This finding is ambiguous when taken in connection with the verdict on the other issues ; it may or may not have been a bar to the demandant. The fact of reconciliatian, or no reconciliation, is nowhere found, and the court, upon the motion in arrest made by the demandant, should have ordered a repleader. It is obvious that the case has not been determined on its merits, and that some degree of negligence or mismanagement is attributable to both sides.

The judgment will therefore be reversed, and the cause remanded for a repleader.