ROBERT STEELE TO USE OF JOHN M. MILROY *et al.*, Respondents, *v.* SILAS W. FARBER, H. C. McPIKE *et al.*, Appellants.

1. *Mortgage — Trust.* — A. conveyed real and other property to B. and other creditors, to secure debts and liabilities, upon condition that if he paid the debts the deed should be void; but if he did not pay the same, then that B. should have power to sell the property at auction, and convey the same, upon such terms as a majority of the grantees might agree upon. The deed did not provide how the proceeds of sale should be disposed of. *Held,* that the deed must be treated as a mortgage, with a power of sale in B., and that the proceeds of sale must be distributed upon the trusts implied in the deed according to the equities of the parties, under the control of a court of equity. *Held also,* that B. had such an interest and title in the property, that, upon a seizure and levy upon the personal property by the sheriff upon an execution against A. in favor of an unsecured creditor, he might make claim for the same, and might sue upon the bond given by the execution creditor, and recover not only for his own interest but also for that of his co-grantees. *Held further,* that upon default of payment, in accordance with the terms of the deed, he might take and hold possession for himself and his co-mortgagees.

2. *Mortgage — Emblements.* — Where the mortgagee enters upon the land and harvests the crops, thus converting them into personalty, he takes them as profits of the estate, to be accounted for to the mortgagor in the settlement of the debt.

3. *Mortgage—Securities.*—A surety may give to his co-sureties a mortgage to secure them against his liability for contribution.

### *Appeal from Ralls Circuit Court.*

William Penix, on 28th June, 1862, executed to the relators (who are the respondents here) a mortgage with power of sale (filed for record July, 1862), conveying certain real estate and personal property, therein described, to secure debts due from him to some of said mortgagees, and to indemnify certain of them as his sureties. After describing the property, he says "and also the products of my farm, until my debts to the aforesaid persons are satisfied." The deed provides that if the grantor pays his individual indebtedness and saves harmless his co-partners and securities against their said liabilities, the deed to be void; but if "he fails to satisfy said indebtedness," then the said John M. Milroy is authorized to sell at public auction said property to the highest bidder on such terms as a majority of the beneficiaries may agree upon, and to convey all grantor's right, title, &c., to said property.

Defendant Farber, as surviving partner of Johnson & Co., having obtained judgment against Penix in the Louisiana Court of Common Pleas, caused an execution to be issued and put in the hands of sheriff Steele (plaintiff below) July 23, 1863, who, on the 24th, levied on, among other things, three ricks of wheat and two stacks of wheat as the property of Penix, advertised and sold the same August 26, 1863. On the 6th August, 1863, John M. Milroy, one of the relators, claimed the wheat, and trial of the right of property being had, it was found to belong to said Milroy; whereupon Farber, with McPike, the other defendant, as his surety, gave to the sheriff the usual bond of indemnity, and the sheriff sold said property to satisfy the execution.

This suit was brought on said bond by the sheriff to the use of the beneficiaries claiming damages to the amount of $700, the alleged value of the property.

The petition set forth that Milroy, one of the relators and acting for them, in writing, verified by affidavit, claimed the property levied on as aforesaid—the judgment in favor of Farber against Penix—the issuing and levy of the execution —trial of the right of property—the finding in favor of Milroy—and then alleges the usual breaches of the bond.

The answer denies the claim by Milroy on behalf of the relators, but says the property was claimed by him in his own right—alleges the wheat levied and sold to be the property of Penix, defendant in the execution, and was subject to seizure and sale under the execution.

The suit was commenced in Pike county and a change of venue taken to Ralls county.

Plaintiffs read in evidence the mortgage or deed of trust from Penix, before mentioned; also an agreement between the relators, dated June 11, 1863, fixing the time and terms on which the property should be sold.

William Penix, the mortgagor, was examined, by whom it was shown that he was living on the farm when the mortgage was executed, and continued to reside on it up to the time of sale; also, that all the property remained in his possession on the farm, except a part of it that he sold after mortgage was made, and such as he consumed in the support of his family; that the wheat was sown in the fall of 1862, on part of the land conveyed, by Penix or by his direction, and he harvested it by direction of Milroy; that he turned over the property (wheat) to Milroy the 20th June, 1863; that the wheat was in stack when the levy was made.

The household furniture was never sold by the trustee, and a horse and some other property were not sold. The debt to Farber & Co. was about $1,000; Penix also owed other debts, probably amounting to $1,200 or $1,500, not secured by mortgage.

Defendants read in evidence transcript of record and pro

ceedings in a suit of Farber, surviving partner, v. W. Penix, in Pike county, showing judgment for $1,018.45, in July, 1862, and execution and return. This return shows a levy on, among other things, three ricks of wheat and two small stacks of wheat, and a lot of oats and hay, a part of which— one rick and one small stack of wheat, and a lot of oats and hay—being claimed by Penix under the exemption law, were set aside to him. The return also shows a claim of the property by Milroy as his property, and upon a trial of the right of property the same was found by the verdict of the jury to be in said Milroy.

There was a judgment for plaintiffs for $520.

*Harrison, Campbell & Ewing*, for appellants.

I. The mortgage did not pass the title to the products of the farm; for when the instrument was executed the crops were not raised, and could not be pledged or mortgaged. A grant of goods not belonging to the grantor at the time of executing the deed, or not in existence, does not pass the title to the property when acquired. (Jones v. Richardson, 10 Metc. 481; Moody v. Wright, 13 Metc. 17; Pettus v. Kellogg, 7 Cush. 456; Head v. Goodwin, 37 Me. 132; Gale v. Burnell, 7 Ad. & Ell. 850, 863; Mogg v. Baker, 3 Mees & W. —.)

The grantor must satisfy the grant by some *new act* for the avowed object and with the view of carrying the former grant or disposition into effect after he acquires the property. (See the authorities above cited and Lum v. Thornton, 1 Mann., G. & S. 379.)

In Jones v. Richardson, *supra*, the mortgagee offered to prove that the property in question, after it was acquired by the mortgagor and before the right of defendant had intervened, (who was an attaching creditor of the mortgagor,) was taken possession of with the other property for the purpose of foreclosing the mortgage; this proof was excluded as irrelevant, the judge (Wilde) who delivered the opinion of the court saying that it did not prove, or tend to prove, any

act done by the mortgagor after the mortgage was executed, by which he ratified the same as to subsequently acquired property; and this act must be done with the view to give effect to the former grant and for that *avowed object.*

Even an express stipulation in a lease that the lessor is " to have or hold a lien on the crops raised on the premises until the rent is paid" is merely an *executory* contract, and by it no general or qualified property in the crops is acquired before they are raised and delivered. Such agreement constitutes no mortgage or pledge of the crops; for when the contract was made they were not raised, and could not be mortgaged or pledged. (Barnard et al. v. Burton et al., 5 Vt. 99.) The cases cited by respondents' counsel (20 Mo. 508; 31 Mo. 445) do not apply here.

II. The respondents acquired no right to the products of the farm as mortgagees of the land. So long as the mortgagor continues in possession by permission of the mortgagee, he is entitled to take the rents and profits in his own right, without rendering any account whatsoever therefor to the mortgagee. (2 Sto. Eq., § 1017; 4 Kent Com. 161.)

The mortgagee has no right to the emblements unless he takes possession of the estate mortgaged; and when severed by the mortgagor, they become his property absolutely and without any liability to account for them. (4 Kent Com. 161; Toby v. Reed, 9 Conn. 224-5, and authorities there cited. )

The modern doctrine is well established, that a mortgage is but a security for the payment of the debt or the discharge of the engagement for which it was given; and until the mortgagee enters for breach of condition, or until foreclosure of the mortgage, the mortgagor is the owner of the mortgaged estate, and has a right to lease, sell, and in every respect to deal with it as owned, so long as he is permittted to remain in possession. (Kennett v. Plummer, 28 Mo. 145-6, and authorities there cited.)

III. The instrument is void as conveying the property to the use of the mortgagor, and as being without considera-

tion. This appears, among others, from this clause, namely : " Whereas I am equally bound with the said James H. Hufford, Wm. W. Waddell, James Bryson, and John B. Henderson, to the following persons," and then follow the names of the creditors. These creditors are not beneficiaries in the mortgage, but the conveyance is to the co-obligors of the mortgagor.

*J. B. Henderson*, for respondents.

I. The clause in the deed of Penix for the benefit of his creditors in the following words, to wit, " also the products of my farm, until my debts to the aforesaid persons are satisfied," is sufficient to pass to the grantees such crops as might be grown after execution of the mortgage. A crop hereafter to be grown, or materials and stock in business to be subsequently acquired, may be mortgaged ; especially is this the case when the lands on which the crops are to be grown, or the buildings, factories or other premises in which the materials and stock are to be used in business, are at the same time mortgaged. (1 Hill. R. P. 4; Evans v. Meinken, 8 Gill. & J. 9; Hughes & Graves, id. 317; Gale v. Burnell, 7 Ad. & Ell. 850 ; 2 Hill. R. P. 336-9, 2d ed.; Page et al., v. Gardner, 20 Mo. 507; Mitchell v. Winslow et als., 2 Sto. 631 ; Coote on Mort. 101-2 ; 1 Pow. on Mort. 17-8.)

II. Whether the clause in the deed conveying the products of the farm was sufficient to pass the crops grown in the future, or not ; it is insisted that the mortgage having become forfeited, the possession of the mortgaged premises having been taken by the mortgagee before severance, and the growing crops having been harvested by him, he is clearly entitled to hold such crops as a security for the mortgaged debt against any claim originating subsequent to the date of the mortgage. (1 Pow. Mort., 6th Eng. ed. 155 ; 4 Kent Com., 6th ed. 155 ; Cooke, Mort., Law Lib. ed. 333 ; 1 Hill. Mort. 2d ed. 161; Walton v. Withington, 9 Mo. 545; Anthony v. Rogers, 17 Mo. 398; 20 Mo. 281; Walcop v. Griswold, 10 Mo. 229 ; Meyer v. Campbell, 12 Mo. 615 ; McIlvaine v. Har-

ris, 20 Mo. 457; Pratte et al. v. Coffman, 27 Mo. 424; Lane v. King, 8 Wend. 584; Hodgson v. Gascoigne, 5 B. & A.; Toby v. Reed, 9 Conn. 216; Gillett v. Balcour, 6 Barb., S. C.; Crews v. Pendleton, 1 Leigh, Va. 294; 2 Den.; 3 John. 216; 3 N. H. 503; 3 Watts, 394; 7 Watts, 378; Hill. R. P. 32; 4 Kent Com. 518-9; 1 Greenl. Ev. 352.)

*First*—When a deed of conveyance absolute is executed, a crop growing on the soil is considered a part of the freehold, and passes with the land. (Hill. R. P. 32; 1 Leigh, Va. 294; 3 Johns. 216; 3 N. H. 503; 3 Watts, 394; 7 id. 378; 4 Kent Com. 518-9; 1 Greenl. Ev. 352; McIlvaine v. Harris, 20 Mo. 457; Pratte et al. v. Coffman's Exec'r, 27 Mo. 424.)

*Secondly*—The rights of a mortgagee of lands after forfeiture against the mortgagor, and those claiming under him, are the same as those of a grantee in an absolute deed of conveyance. (12 Mo. 615; 10 Mo. 229; 8 Mo. 365; 8 Mo. 615; 12 Mo. 117; 17 Mo. 398; 20 Mo. 281; 12 Mo. 117.)

*Thirdly*—Both the grantee in an absolute deed and a mortgagee after forfeiture are entitled to the growing crops, because their title to the premises is paramount; and being entitled to the land, they are entitled to the crops standing on it as a part of the land. (See authorities above cited.)

HOLMES, Judge, delivered the opinion of the court.

After some hesitation as to whether this instrument (which is very inartificially drawn) be properly a mortgage, a deed of trust, or a partial assignment for the benefit of creditors, we have come to the conclusion that it must be considered as a mortgage containing a power to sell, and creating a trust in the proceeds of the sale. It conveys the property, consisting of real and personal estate, to the sixteen persons named as grantees and parties of the second part, and it is conditioned for the payment of certain debts owed by the grantor to some of these parties, and for indemnity against liabilities severally incurred by others of them on account of the grantor, and the persons so named as grantees are the

same persons who are thus severally secured. It gives to John M. Milroy, one of their number, a power to sell the property conveyed in case of default made in such payment or indemnification. The whole title or estate is not vested in him, but only a joint interest as tenant in common or part owner with the rest; but a power may be a mere naked collateral power, not annexed to any estate, or a power coupled with an interest and estate; and it may be given to any one of the parties having an interest or estate in the property, or even to a stranger who takes no title or estate in the property conveyed. (6 Crui. Dig., tit. Power, A. 1; Hard. 415; 4 Crui. Dig., Greenl. 133–7*; 4 Kent Com., 316–22*; 1 Sug. Vend. 522* n. 1, 523* n. 2; Carson v. Blakey, 6 Mo. 273.) In either case, the execution of the power by a sale and conveyance of the property to the purchaser devests the legal title or fee out of the persons to whom it has passed, and vests it in the purchaser under the power; and the person who is entrusted with the execution of such a power becomes a trustee of the proceeds of the sale for application and distribution in accordance with the trusts of the instrument, express or implied, subject to the jurisdiction and control of a court of equity in the matter of trusts. (Braman v. Stiles, 2 Pick. 460; Dabney v. Manning, 3 Ohio, 321; Peter v. Beverly, 10 Pet. 532; Eaton v. Whiting, 3 Pick. 484; Kinsley v. Ames, 2 Metc. 29; 1 Crui. Dig., tit. XV., ch. 1, § 44, n. 1, & ch. 6, § 1, n. 1, by Greenl.; 2 Sto. Eq. Jur., § 1031, 1196–7.)

This mortgage does not in any express words give to John M. Milroy any right to take possession of the property conveyed upon default made, nor does it declare in terms what he shall do with the proceeds of the sale when received; but it may be gathered and implied from the character and tenor of the whole instrument, that he was to take possession for the purpose of a sale, deliver the property sold to the purchasers and receive the purchase money, and that, when received, it is to be applied to the payment of the debts and liabilities thereon secured to be paid, or indemnified, to the

persons named as mortgagees and creditors.   All this would seem to be necessarily implied in the grant of a power to sell and convey the property for the purposes of the deed, and a trust arises by operation of law in respect of the proceeds, either for the use of the grantor, or for the use and benefit of the persons named as beneficiaries, such intention being sufficiently expressed and declared in the instrument.  We think this mortgage to be sufficiently clear and definite as to the object and purpose of the conveyance, and as to the beneficiaries, and as to the appropriation to be made of the funds to enable a court of equity to enforce an execution of the power and a performance of the trust.

John M. Milroy, having thus a right to take possession of the property, when default was made, for the purpose of selling it, in pursuance of the power given for the benefit of the mortgagees when the whole property was turned over to him by the mortgagor for that purpose, acquired a lawful possession of the property on behalf of himself and the other mortgagees.   The proof is clear that the whole property, real and personal, was delivered up to him by the mortgagor on the 20th day of June, 1863, to be advertised and sold under the mortgage.   The property was advertised for sale, but the mortgagor was suffered to remain in his occupancy of the premises by the consent of Milroy, and, as he himself says, at the mercy of his creditors and the purchasers.   At this time the wheat in question was a growing crop on the farm, as yet unsevered.   It was harvested under the direction of Milroy, stacked on the farm, and left in the immediate charge of the mortgagor ; but this did not make the stacks of wheat subject to a levy and sale under an execution in favor of a creditor of the mortgagor.   The bare possession of a chattel by the mortgagor with the consent or permission of the mortgagee, and determinable at his will, does not make it subject to such levy.  (King v. Bailey, 8 Mo. 332.)   The growing crops passed to the mortgagees by virtue of the mortgage of the land on which they were growing.   A growing crop is an interest in land ; it is a part of the freehold, and it passes

by a deed conveying the land without more. (McIlvaine v. Harris, 20 Mo. 458; Pratte v. Coffman, 27 Mo. 424 ; 1 Crui. Dig., Greenl. 59, s. n. 1.) The doctrine of emblements, or of contracts for the sale of growing crops, as such, before severance, has no application in this case ; the matter is governed here by the contract of the parties as expressed in the conveyance. The mortgagees, or rather the trustee of the power on their behalf, had a right to enter and take possession of the farm and of whatever belonged to it as a part of the realty ; and so of the growing crops, conveyed for the security of the debts and liabilities. When the crops are harvested by the mortgagee in possession, they are to be applied to the payment of debts secured, and they go thus to the benefit of the mortgagor. (Doe v. Giles, 5 Bingh. 427 ; Creins v. Pendleton, 1 Leigh, 297 ; Pested v. Colvin, 3 J. R. 216 ; Wilkins v. Vashbinden, 7 Watts, 378 ; Evans v. Meinken, 8 Gill & J. 39 ; Walton v. Withington, 9 Mo. 549.) Even where an execution is levied on a growing crop as a part of the realty subject to execution, in which case a sale gives the purchaser a right to enter and harvest the crop as against the judgment debtor, a prior mortgage of the land takes precedence of the execution and carries both land and crop. (Shepherd v. Philbrick, 2 Den. 174.) When the mortgagee takes possession and cuts the growing crops, thus converting them into personalty, he takes them as profits of the estate to be accounted for to the mortgagor in settlement of the debt and interest ; but when the mortgagor remains in possession, and harvests the crops, he takes them for his own use and benefit as consumable profits of the farm, absolutely as his own. (Toby v. Reed, 9 Conn. 216 ; 2 Sto. Eq. § 1017.)

There can be no doubt that this crop of wheat passed to the mortgagees with the land by virtue of the conveyance, without reference to the clause concerning the future " products" of the farm, when a virtual entry was made, and possession taken of the premises, by or on behalf of the mortgagees. It is equally clear that Milroy had the right and

power to enter and take possession of the property on behalf of himself and the others as mortgagees. And when the growing crop was harvested by him and thus became converted into personal estate, he had the same right to the possession and the same title as before; and it matters not, as against these defendants, or the execution creditor, whether the whole title was vested in him, or 'a joint interest as tenant in common or part owner with the other mortgagees, or a mere special property and right of possession. He had such an interest, title, and right of possession, as was sufficient to enable him to claim and hold the property against the mortgagor, and the execution creditor, for all the purposes of this case. It was clearly not the property of the mortgagor; nor was it subject to levy and sale as such under an execution against him. This being so, it becomes immaterial and altogether unnecessary to consider whether or not the clause, "*and also the products of my farm until my debts to the aforesaid persons are satisfied*," would be effectual either in law or equity to convey "products" which were not in existence as such at the date of the mortgage, or products which had been severed and converted into personalty by the mortgagor while he remained in possession of the premises.

The first instruction given for the plaintiffs, taken by itself, would be open to serious objection; but, when considered in reference to the evidence before the jury, it may be sustained as substantially correct. It omitted to include among the facts supposed in it the very important circumstances, that the mortgagee had entered and taken possession of the premises while the crop was yet standing on the land, and that it was harvested under his direction and for himself; but these facts were proved, and there was no evidence whatever that the mortgagor had harvested the crop for himself while he remained in possession as mortgagor. So far as this instruction predicated a right to recover solely upon the clause relating to "products of the farm," whether "harvested by himself or the relators," we think it was superfluous, if not also erroneous; but it was followed by other instructions

for the plaintiffs which laid down the law correctly in the case made, and we do not think the error of sufficient importance to call for a reversal of the judgment on that ground alone.

For similar reasons the second, third and fourth instructions, which were refused for the defendants, on the same subject, may be considered as rightly enough refused. There was no sufficient basis in the evidence for such instructions, and they were wholly immaterial to the issue on the case made.

It is contended on behalf of the defendants that the mortgage deed was void on its face, for the reason that it made a reservation to the use of the grantor himself, and covered up the property beyond the reach of creditors for his own use and benefit. This objection is founded upon a clause in the deed which reads thus : "and whereas I am equally bound with" (four of the mortgagees named) "to the following persons," named as holders of notes for specified amounts. It is by no means clear in what manner the grantor and these four grantees were bound or liable on these notes; but it would seem to be a fair construction, that it means to say they were bound as co-sureties, or at least as endorsers. The four persons named as mortgagees are indemnified against liability on his account on these notes, that is all. There can be no pretence that the holders of these notes are secured as beneficiaries in the deed. It is not stated who were the makers of the notes, but the next clause goes on to speak "also" of his "individual debts"; from which it may be inferred that he was not the maker of these notes. The language imports a joint liability as co-sureties. In such case, either of them might be compelled to pay the whole, and there would then be a right to a contribution from the others. As an indemnification for such liability the mortgage would be valid. If the other persons became liable to him for a contribution, that indebtedness would be subject to garnishment at the suit of his creditors unaffected by the mortgage; and as to any liability on his part to them, it is

not apparent how any question of fraud can arise on the face of the instrument, or otherwise than as a matter of fact *aliunde* upon evidence tending to show that the property conveyed was largely more than enough to secure the whole indebtedness provided for in the mortgage, or fraud in fact in the making of the deed; and this would be a matter of fact for a jury. We do not see that there is any fraud in law, in this respect, appearing on the face of the instrument.

It is further objected that John M. Milroy alone can maintain a suit on this bond. The petition alleges that he claimed the property before the sheriff for himself and the other mortgagees. The answer denies this. The return of the sheriff is, that John M. Milroy claimed the property, in writing, as his own. The claim itself does not appear in the record, nor is there any evidence on this point. The statute concerning executions (R. C. 1855, p. 743) provides that when any person shall in writing, verified by affidavit, claim the property levied on, a jury may be summoned to try the right of property (sec. 26), but, notwithstanding the verdict may be for the claimant, the officer must proceed to sell if the plaintiff will tender him a bond of indemnity (sec. 30). The claimant may sue on the bond in the name of the sheriff to his own use (sec. 31), and the execution of the bond is a bar to his right of action against the officer (sec. 32). Those who do not make such claim in writing under the act are not barred of their actions against the sheriff. (Bradley v. Holliday, 28 Mo. 150.) The bond is conditioned, not only to pay and satisfy any person " claiming title to such property" —that is, any person who makes claim in writing, under the act, for all damages which he may sustain in consequence of the seizure and sale—but also, and chiefly, to indemnify the officer against all damages which he may sustain in consequence of the seizure and sale of the property. No person is bound to appear and claim the property in writing before the sheriff; nor is any one who does not so claim, barred of his action against the officer. The bond is no protection to the officer against persons who make no claim; it protects

him only against the claimant for whose benefit as well as his own the bond is given. The act evidently contemplated that the officer may be sued in trespass by other persons than the claimant in writing; and the bond when given by the plaintiff, upon any claim, is therefore to be conditioned to indemnify him against all damages which he may sustain by reason of such suits. In such case, he will sue in his own name and to his own use; and the person who has made claim in writing, under the act, may maintain an action on the bond in the name of the officer to his own use (sec. 31); but persons who have never made claim in writing in this manner, being left to their actions against the officer, have no right to sue upon the bond at all. It is not given for their benefit. If it were expressed in terms which would give it force for their benefit as a common law bond, independent of the statute, it is very possible they might sue upon it. (Watson v. Frank, 21 Mo. 108.) The bond being given to the sheriff in his name only, it is only by force of the statute that an actual claimant can sue upon it in his name. It follows that this suit should have been brought to the use of John M. Milroy alone. He, only, made claim in writing before the sheriff; and, as we have seen, he had such a right and title to the property as would have enabled him to maintain an action against the sheriff if a bond had not been given, and now enables him to sue upon the bond in the name of the officer to his own use. He recovers the property, or the value of it money, not in his individual right only, but in his character of trustee of the power to sell under the mortgage, and the trust fund in his hands must be appropriated and applied as the mortgage directs, under the control of a court of equity, in which the other mortgagees may find an ample remedy in case their rights should not be respected.

There could be no such thing as a separate action for each one of those mortgagees against the sheriff in respect of his particular interest in the property, nor can they be treated altogether as one claimant, acting in the name of John M.

Milroy. It does not appear that the claim was made in that manner. Milroy had taken possession of the property under his power for the purpose of a sale and an execution of the trust. He alone could properly make the claim before the sheriff, and he only is entitled to sue upon this bond.

The sixth instruction asked by defendants was correct in so far as it told the jury that the verdict should be for the defendants as to all the plaintiffs but John M. Milroy, but it was erroneous in declaring that Milroy could recover only for his individual share.

The seventh instruction for defendants was correct enough in itself, and might have been given if the state of the evidence had been such as to make it relevant or important. As it was, there was no substantial error in refusing it.

The eighth instruction asked by defendants was rightly refused. (Ashby v. Winston et als., 34 Mo. 311.)

This matter of the parties plaintiff appears to be purely a technical difficulty. We do not see that it is in any way important to the rights of the defendants here, or that it would make any difference with their defence, if a new trial were granted. And this court having power by the statute to reverse or affirm on the whole record, and to give such judgment here as shall be agreeable to law (R. C. 1855, p. 1301, § 35), we think justice would best be accomplished by affirming the judgment as to Robert Steele to the use of John M. Milroy, and reversing and dismissing the case as to the other plaintiffs, who are no proper parties to this action. Judgment will be entered accordingly.

Judge Wagner concurs; Judge Lovelace absent.