J. R. HAYDEN, Defendant in Error, v. CHRISTIAN BURKEMPER, Plaintiff in Error.

St. Louis Court of Appeals, April 1, 1890.

1. **Emblements :** AS BETWEEN MORTGAGOR AND MORTGAGEE. Annual crops planted on mortgaged lands by the mortgagor, or by one claiming under him, and remaining unsevered at the time of the foreclosure of the mortgage, but subsequently severed by the mortgagor while still in the possession of the lands, pass to the purchaser at the foreclosure sale as against the claims of the mortgagor, or of such claimant under him, provided that they were sown after the condition broken ; *sed aliter*, if such crops were planted before condition broken.

*Per Thompson, J., dissenting :*

2. ———. Such crops remain the property of the mortgagor, or of such claimant under him, whether sown before or after condition broken.

*Writ of Error to the St. Charles Circuit Court.*—HON. W. W. EDWARDS, Judge.

AFFIRMED (*and certified to the Supreme Court*).

*R. H. Norton* and *T. F. McDearmon*, for the plaintiff in error.

(1) The court erred in refusing the first instruction asked by defendant. It was a correct declaration of law in the case. *Jenkins v. McCoy*, 50 Mo. 349; *Adams v. Leip*, 71 Mo. 598; *White v. Wear*, 4 Mo. App. 341; *Harris v. Turner*, 46 Mo. 438; *Kennett v. Plummer*, 28 Mo. 145; *Morgner v. Biggs*, 46 Mo. 66; *McAllister v. Lawler*, 32 Mo. App. 91. (2) The court erred in refusing defendant's second instruction. It was a correct declaration of law in the case. *Adams v. Leip*, 71 Mo. 597; *Jenkins v. McCoy*, 50 Mo. 348; *Harris v. Turner*, 46 Mo. 438; *McAllister v. Lawler*, 32 Mo. App. 91. (3) Defendant's third instruction was correct and should have been given. *Morgner v. Biggs*, 46 Mo. 66, and authorities, *supra*.

*Theodore Bruere*, for the defendant in error.

(1) The court was right in refusing the first instruction asked by plaintiff in error. This is no case where the mortgagee entered for breach of condition of the mortgage. A sale had taken place under a deed of trust and the purchaser at said sale became entitled to the possession of the lands and to the crops then growing thereon. All rights Burkemper had before the sale to sever the crop from the land were gone and extinguished by the sale. *Steele v. Farber*, 37 Mo. 80; *Salmon v. Fewell*, 17 Mo. App. 118. (2) The court properly refused the second instruction asked by plaintiff in error. *Garth v. Caldwell*, 72 Mo. 622; *Salmon v. Fewell*, 17 Mo. App. 123; *Culverhouse v. Worth*, 32 Mo. App. 427; *Wallace v. Cherry*, 32 Mo. App. 436. (3) The third instruction refused by the court is not the law nor was there any evidence that the wheat crop was put in with the approval of defendant in error. The

mere fact that he permitted the plaintiff in error to sow wheat cannot change the terms of the deed of trust nor effect his rights under it.

ROMBAUER, P. J., delivered the opinion of the court.

This record raises the mooted question whether, under the decisions in this state, as between the mortgagor and mortgagee, in case of a forced sale, the former or the latter is entitled to the annual crop of cereals growing on the premises sold, and unsevered from the land on the day of sale, but subsequently severed by the mortgagor, and harvested while he is still in possession of the premises.

The action is one of replevin for eighteen hundred shocks of wheat, of the alleged value of eight hundred dollars. The answer, besides a general denial, raises some affirmative defenses, which we deem it unnecessary to notice, as no evidence was offered in their support, and hence the decision of the case depends almost exclusively on the correct answer to be given to the inquiry above propounded.

The case was tried by the court without a jury, and the following facts were shown by the plaintiff's evidence, which was all the evidence in the case: The plaintiff, in September, 1882, sold the farm, on which this wheat was subsequently grown, to one Cambron for twelve thousand dollars, and took from him a deed of trust on the land conveyed, securing the deferred payments of the purchase money. These deferred payments consisted of two principal notes, one for two thousand dollars, and one for fifty-five hundred dollars, and five interest notes of three hundred and ninety-five dollars each. Cambron subsequently sold the land to the defendant, who assumed the payment of this incumbrance. In June, 1887, a Mrs. Stahlschmidt was the holder of the principal note for two thousand dollars, and one Dyer the holder of the principal note for fifty-five hundred dollars, as collateral for moneys advanced

and liabilities incurred for plaintiff. Both of these notes were wholly unpaid. The defendant had paid seven hundred dollars, on account of the first two interest notes, but the residue of the interest notes were also unpaid and were, at the date of sale, held by the plaintiff. There was evidence tending to show that the plaintiff frequently urged the defendant to pay up the incumbrance, or part of it, and that defendant made repeated promises to do so, but always failed to fulfill them; but there was no evidence that the plaintiff advised the defendant of his intention to foreclose prior to steps taken for that purpose by advertisement. The plaintiff was aware that the defendant was raising a wheat crop on the premises, as he resided in the neighborhood of the land and saw it frequently. The trustee's sale took place June 4, 1887, and Dyer became the purchaser for eighty-eight hundred dollars. It was in evidence that Dyer bought the land at plaintiff's request, with an understanding that he should hold it for the plaintiff until he, Dyer, was reimbursed for moneys advanced to plaintiff and liabilities incurred for him, and should then convey it to the plaintiff. No money passed at the sale. On the eighth of June, 1887, Dyer made a bill of sale to the plaintiff of fifty acres, more or less, of the growing wheat on the farm purchased by him at trustee's sale. What transpired afterwards is thus stated by the plaintiff: "I saw him (the defendant) about the wheat, he said he was going to cut it. I got the machine and he (sic) the men engaged to cut it, and went to him, and he made the arrangement to board me; he said he would take the wheat if I cut it, but it appears that, when the wheat was cut, he got out of the notion, and said he would cut the wheat himself. I went around after the sale, I said are you going to cut this wheat, I said, 'If you are going to cut it, I will not bother you, but I want to know if you are going to cut it,' he said, 'I am going to cut

it;' he said, 'I will go and take the wheat if you cut it.'"

"*Q.* He cut it himself? *A.* Yes, sir."

The plaintiff further testified that the wheat, on the day of sale, was nearly ready to cut, and his purpose for advertising the sale at that time was to get a claim upon the wheat before it was harvested, and to keep the defendant from getting away with the wheat.

Upon the facts thus shown, the court rendered judgment for the plaintiff for possession, and nominal damages ; and, as the facts are uncontroverted, the only question for decision is whether, under the facts shown, the plaintiff or the defendant was entitled to the possession of the wheat.

The general rule recognized in this country is that a tenant, whose term is for an uncertain period, shall reap a crop which he sows, even though his term expires before the crop matures. This rule, however, has never prevailed as between mortgagor and mortgagee. Whatever crops are, at the date of the foreclosure, growing upon the mortgaged premises, if planted after the mortgage is made, become the mortgagee's, whether planted by the mortgagor or his tenant, free from any claim upon them by such tenant ; but a foreclosure, after the crops are severed, does not carry an interest in them to the mortgagee or purchaser. 1 Washburn Real Prop. [5 Ed.] 144 ; 2 Jones on Mort., sec. 1658. Professor Washburn admits that the rule is limited to cases where the mortgage creates an estate in the land, and not a mere lien, since it seems to be settled that a tenant, who hires land subject to a judgment lien, and plants crops upon them prior to the sale of the premises, may claim them against a purchaser at the sheriff's sale upon execution under the judgment. And Mr. Jones, in the section above quoted, says that, in states where a mortgage creates no estate in the mortgagee, but confers on him only a lien, the

rule has been established that the mortgagor and his tenant may claim the crops he has sown, which are growing at the time of the foreclosure of the mortgage. In support of this proposition, the author cites *Heavilon v. Farmers' Bank*, 81 Ind. 249; *Allen v. Elderkin*, 62 Wis. 627; and *Gregory v. Rosenkrans*, 72 Wis. 220. An examination of these cases shows, however, that the author's text finds support only in the Indiana case, the Wisconsin cases resting on the proposition that a foreclosure by sale, without confirmation, does not divest the mortgagor's title, hence he may remove crops growing on the land at the date of the foreclosure sale, provided the severance takes place before the confirmation of such sale.

Now in this state the rule has always been that a mortgage or deed of trust is a mere security for the debt, and that the legal title remains in the mortgagor until condition broken. *Kennett v. Plummer*, 28 Mo. 145. But, after condition broken, the legal title passes to the mortgagee, subject to defeasance by payment of the debt before foreclosure (*Pease v. Pilot Knob Iron Co.*, 49 Mo. 124), and there is no difference in that respect between a mortgage and a deed of trust. *Johnson v. Houston*, 47 Mo. 227. Thus it was held that a mortgagee, after condition broken, may maintain ejectment for the mortgaged land. *Reddick v. Gressman*, 49 Mo. 389, and the cases of *Johnson v. Houston*, 47 Mo. 227, and *Siemers v. Schrader*, 88 Mo. 23, recognize that a trustee in a deed of trust may do the same after default in payment of the debt secured, and before foreclosure by sale.

In the case at bar the deed of trust among other notes secures two interest notes, due respectively September 11, 1885, and 1886, and one principal note for two thousand dollars, due September 11, 1885. These notes, though due, were unpaid when the wheat in controversy was sown, and remained unpaid until after

foreclosure by sale in 1887. Hence it is evident that, at the date when the wheat was sown, and from thence continually until it matured, the legal title to the land on which it grew was in the trustee under the deed, and not in the mortgagor. Under these circumstances there is nothing in this case taking it out of the rule, which is recognized everywhere, that, where a mortgagee conveys the legal title, crops growing upon the land at date of foreclosure, are property of the mortgagee, and pass to the purchaser at the foreclosure sale, since, at the date when they were sown, the mortgage or deed of trust had ceased to be a mere lien, and had ripened into a defeasible legal title.

There is nothing in the decisions in this state which is opposed to this view, although it is often difficult to discover the exact principle on which some of them rest. In *Steele v. Farber*, 37 Mo. 80, the contest was in regard to priority of right between an attaching creditor of the mortgagor, and the mortgagee in possession, but, as it stood admitted that the mortgagee had entered prior to the harvest, and that the mortgagor, in harvesting the crop, had acted as his agent and by his request, the points *decided* furnish no authority in this case one way or another. *Jenkins v. McCoy*, 50 Mo. 348, merely decides that the value of a crop raised by a trespasser upon land is not the measure of damages in an action of trespass by the owner against the trespasser, while *Morgner v. Biggs*, 46 Mo. 66, illustrates the proposition hereinabove stated, that a lessee or licensee for an uncertain period is entitled to harvest the crops he sows, although his right of occupancy expired before they mature. *Adams v. Leip*, 71 Mo. 598, seems to extend the same right to an adverse occupier, although, since that was also an action of replevin, the case is determined by the proposition decided in *Jenkins v. McCoy*, *supra*. Neither of these cases were contests between the mortgagor and the mortgagee, or the mortgagor and a purchaser at the foreclosure sale.

Hayden v. Burkemper.

The first contest of this character seems to have arisen in *Salmon v. Fewell*, 17 Mo. App. 123. That case decides on the authority of *Garth v. Caldwell*, 72 Mo. 622, that annual crops of cereals, while unsevered from the land, are personal property and subject to replevin, and also that such crops will pass to the purchaser at the foreclosure sale of a mortgage, as against the tenant who sowed them. The point did not arise for decision, whether the latter would be the rule, if the crops were sown before condition broken. In *McAllister v. Lawler*, 32 Mo. App. 91, the contest was also between a mortgagor and a purchaser at foreclosure sale ; the crops were growing on the premises at the time of the sale, and were severed thereafter by the mortgagor who remained in possession, and we held that replevin would not lie by the purchaser. It did not appear in that case either whether the crops were sown before or after condition broken, but the language of Judge PEERS is broad enough to warrant the conclusion that the court deemed it immaterial, whether they were sown before or after, while, under the general principle stated by Prof. Washburn, and Mr. Jones, and recognized in the case of *Heavilon v. Farmers' Bank*, *supra*, that should be a very material inquiry. In the subsequent case of *Wallace v. Cherry*, 32 Mo. App. 436, Judge ELLISON, speaking for the court broadly states "that there never has been any question that, as between a mortgagor or a stranger and the mortgagee, a sale of the mortgaged premises covered growing crops;" yet, as above seen, there has been a serious question on that subject, raised by both text-writers and judges.

Endeavoring to deduce a principal from the universally recognized rule, and the many decisions in this state, we come to this conclusion : Where lands are subject to a mere lien at the time the crop is sown, the person in possession who sows the crop is entitled to

harvest it, and it is immaterial, as it must be immaterial on principle, whether the lien is one created *in invitum* or by the acts of the parties, the lien of a judgment or the lien of a mortgage ; but in all cases where the mortgage conveys the legal estate, or the legal estate by condition broken becomes vested in the mortgagee, and the crops are sown after the legal estate thus vests, and are unsevered at the date of the foreclosure or entry by the mortgagee for condition broken, the title to them passes to the mortgagee or purchaser at foreclosure sale, and such title cannot be divested by a subsequent severance by the mortgagor.

This ruling seems to reconcile decided cases, and is opposed to no decisions. It is in harmony with the decisions in all other states where the common law is known and is administered, and we cannot assume that the supreme court of this state ever intended to lay down a rule on this subject different from that in any other state. The rule is just and equitable, because it advises the mortgagor that he sows crops after condition broken, and at a time when the legal estate has passed from him, subject to the mortgagor's right of re-entry at any time.

Upon the conceded facts of the case these views lead to an affirmance of the judgment, and with the concurrence of Judge BIGGS it is affirmed. Judge THOMPSON dissents, being of opinion that the decision rendered is opposed to *Jenkins v. McCoy* and *Adams v. Leip*, *supra*. It is, therefore, ordered that the case be certified to the supreme court for final determination, and that, until final determination by that court, all further proceedings on this judgment be stayed.

THOMPSON, J. ( *dissenting* ).—I do not concur in this opinion. I cannot reconcile it with the doctrine of the following cases : *Adams v. Leip*, 71 Mo. 597, *Jenkins v. McCoy*, 50 Mo. 349 ; *Harris v. Turner*, 46 Mo. 438 ;

*McAllister v. Lawler*, 32 Mo. App. 91. The mortgagee, after condition broken, is not the beneficial owner of the property; he does not become such until entry or purchase at a foreclosure sale. The legal title passes to him, but only as a security for the debt. *Kennett v. Plummer*, 28 Mo. 145; *White v. Wear*, 4 Mo. App. 341. Growing crops are personal property, independent and distinct from the land. *Garth v. Caldwell*, 72 Mo. 627. When the mortgagee enters or purchases at a foreclosure sale, he certainly does not acquire any higher title to them, than if they had been grown on his land by a trespasser. The decisions first cited show that a mere trespasser can hold a crop, which he has raised on land and harvested, against the real owner of the land. It would introduce a great incongruity into the law to hold that the grantor in a deed of trust in possession, although after condition broken, has not as good a title to the crop, which he plants and harvests on land, as a trespasser without any right whatever. The decisions first cited establish an exceedingly simple and just rule, and one which is capable of easy application in all cases. That rule is that the title to crops grown upon land follows the possession of the land, in such a sense that, if he that sows them harvests them before the real owner enters, he gets them, and they cannot be taken from him in replevin. We merely followed and applied that rule to such a case as the one now before us, in *McAllister v. Lawler*, *supra*, and we ought not to overrule that case without cogent reasons, as it established a rule of property.

I think that this case is opposed to the decisions of the supreme court in the four cases first above cited, and that it hence ought to be certified to that court in conformity with the constitutional mandate.