S. H. WHITE ET AL., Respondents, *v.* J. H. WEAR ET AL. ;

E. J. BEARD, Appellant.

July 3, 1877.

1. A mortgagee cannot, before entry for condition broken, recover rent due from the tenant of the mortgageor, which accrued under a lease made subsequent to the mortgage.

2. Where the mortgagee is entitled to possession for condition broken, he must adopt the mode provided in the mortgage for enforcing his right of entry and for the collection of the rents and profits.

3. "Where the mortgagee and those claiming under him have always recognized the validity of a lease made by the mortgageor when he had the equitable, but not the legal, title to the premises mortgaged and leased, they are estopped to deny the lease on an interplea to determine whether the assignee of the mortgagee or the assignee of the mortgageor is entitled to the rents."

APPEAL from St. Louis Circuit Court.

*Affirmed.*

HITCHCOCK, LUBKE & PLAYER, for appellant: Rights of the mortgagee to rents after condition broken. — 1 Pow. on Mort. 171–175 ; 1 Hill. on Mort., sec. 28 ; *Caker* v. *Pearsall*, 6 Ala. 542 ; *Smith* v. *Taylor*, 9 Ala. 637 ; *Hutchinson* v. *Deering*, 20 Ala. 802, and cases cited ; *Masony* v. *United States Bank*, 4 Ala. 735 ; *Henshaw* v. *Wells*, 9 Humph. 582 ; *Johnston* v. *Jones*, 9 Ad. & E. 809 ; *Babcock* v. *Kennedy*, 1 Vt. 457 ; Coote on L. & T. 519, 605 ; Taylor on L. & T., 6th ed., sec. 119 ; *Honacker* v. *Shough*, 55 Mo. 472. Subrogation. — *McQueen* v. *Peay*, 58 Mo. 56 ; *Wolff* v. *Walter*, 56 Mo. 295. The beneficiary in a deed of trust, who has obtained possession after condition broken, holds the title against the grantor in the deed until performance of the condition. — *Johnston* v. *Houston*, 47 Mo. 227.

S. HERMANN and G. M. STEWART, for respondents : The mortgageor, until entry by the mortgagee, is entitled to the profits of the land. — *Kennett* v. *Plumer*, 28 Mo. 145 ; *Wilder* v. *Houghton*, 1 Pick. 88 ; *Mayo* v. *Fletcher*, 14 Pick.

525 ; *McKirchen* v. *Hawley*, 16 Johns. 290 ; *Field* v. *Swan*, 10 Metc. 113 ; *Galveston R. Co.* v. *Cowdrey*, 11 Wall. 483. Mortgagee cannot recover until demand. — *Peters* v. *Elkins*, 14 Ohio, 345 ; *Noyes* v. *Rich*, 52 Me. 116 ; *Rogers* v. *Humphreys*, 4 Ad. & E. 315 ; *Evans* v. *Eliot*, 9 Ad. & E. 355 ; *Kimbal* v. *Lockwood*, 6 R. I. 138 ; *Trent* v. *Hunt*, 9 Exch. 21. The mortgagee must adopt the mode of enforcing his right of entry provided by the mortgage. — *Gilman* v. *Telegraph Co.*, 1 Otto, 603 ; *Douglas* v. *Cline*, Cent. L. J., Oct. 14, 1876 ; *American Bridge Co.* v. *Hilderbach*, 4 Cent. L. J. 367.

BAKEWELL, J., delivered the opinion of the court.

The plaintiffs sued Wear & Co. for the rents of a building on the corner of Fifth and Washington Avenue, St. Louis. The sum claimed is $1,735, being rent for June, and up to July 9, 1876. The defendants Wear & Co. admitted that the amount claimed was due by them for rent for the period named, but said that it was claimed by Eleazer J. Beard, as holder of a deed of trust upon the property. Wear & Co. were permitted to pay the money into court, and Beard was directed to interplead. The question at issue is whether this rent belongs to White & Hermann, as assignees of the lessor, or to Beard, as mortgagee after condition broken. There was a decree below in favor of plaintiffs ; and the interpleader appeals.

It appears from the evidence that one White owned a lot of ground on the south-west corner of Fifth Street and Washington Avenue, in St. Louis, which he demised to Reilly, Fletcher, and Seitz, for a term of forty years, at an annual ground-rent of $4,000 a year, the taxes to be paid by the lessees, the rent payable quarterly, any failure to pay the rent or taxes to give a right of forfeiture to the lessor.

On September 16, 1874, the lessees, Reilly, Fletcher, and Seitz, having meanwhile erected a valuable building on the lot, conveyed their leasehold interest to the Guardian

Building Company, which, on the same day, borrowed from the Boatmen's Savings-Bank $2,600, and secured the same by deed of trust on the property in question. This deed of trust was made to one Leavy, as trustee, and contained a covenant that any failure to pay the notes, or to pay ground-rent, taxes, liens, or insurance, should entitle the trustee to take immediate possession, and, after default, the mortgagee should be entitled to immediate possession, and the mortgageor should hold the premises only as tenant of the trustee in the deed of trust. Afterwards Reilly became the owner of all the stock of the Guardian Building Company, and, although he had not the legal title to the premises in question, or to the leasehold interest mortgaged, he, on January 2, 1875, gave a written lease of the main portion of the building to Wear & Co. for five years, at a rent of $1,375 a month. On January 5, 1875, Reilly, who was practically the Guardian Building Company, as he owned all its stock, in the name of the company borrowed $18,000 of the Guardian Savings-Bank, giving a note in the name of the Guardian Building Company, secured by a second deed of trust on the same premises. The trustee was the same, and the conditions as to possession in case of non-payment of notes, taxes, etc., were the same as in the first deed of trust. On November 15, 1875, Reilly was adjudicated a bankrupt. The Guardian Savings-Bank had also become insolvent. On December 18, 1875, proceedings were commenced in the Circuit Court to obtain a decree confirming the deeds of trust which Reilly had executed, as president of the Guardian Building Company, on the leasehold. Reilly made opposition, and seemed disposed to give as much trouble as he could. A receiver was appointed by the Circuit Court to collect the rents, and pay ground-rent and taxes to prevent forfeiture of the lease, and to keep down interest on the mortgage debt. Meanwhile Reilly was endeavoring to make a compromise with his creditors, and made an assignment of various assets to plaintiffs as trustees

for various persons who advanced him money to enable him to effect this compromise. This assignment embraced, among other things, the equity of redemption in the leasehold. On April 3, 1876, Reilly withdrew his opposition to a decree confirming the deed of trust; not, however, until he had got the Boatmen's Savings Institution, whose note was overdue, to stipulate that it would not foreclose until the expiration of seventy days from the date of the decree, which would defer foreclosure until June 10th. The receiver was discharged when the decree was entered.

It is claimed by plaintiffs that before the money was obtained which enabled Reilly to compromise with his creditors they had an interview with the president of the Boatmen's Savings Institution, in which he disclaimed any intention on the part of his bank of claiming any rents from the mortgaged premises. They say that on the faith of this statement they concluded their transaction with Reilly. Reilly also swears that he had a positive promise that no claim would be made for the rents, both from the president of the Boatmen's Savings Institution and from its attorney. As to this there is a conflict of testimony, and Reilly is flatly contradicted by the president of the bank in this particular.

On April 3d, Leavy, the trustee in the two deeds of trust, died, and the sheriff was substituted as trustee in the first deed of trust, and one Cummiskey in the other. On April 10th the Boatmen's Savings-Bank paid $3,800 on account of ground-rent on the mortgaged premises. On June 6th, White & Hermann, the plaintiffs, as assignees of Reilly, notified Wear & Co., the tenants of the property in question, to pay rent to no one but themselves, and that they claimed the rent as representatives of Reilly. On July 8th the property was sold under the second deed of trust, and bought in by the Guardian Savings-Bank. On July 15th plaintiffs commenced the present suit against Wear & Co. for the rent from June 1st to July 8th, the day of the sale

to the Guardian Savings-Bank. On July 28th, Beard pur-
chased of the Boatmen's Savings Institution the note which
it held, secured by deed of trust on this property, and, for
value, received an assignment of the note, the deed of trust,
and all amounts paid by the bank for ground-rent and
insurance ; and, on August 24th, Beard served formal notice
on Wear & Co. that he demanded the rents, as assignee of
the mortgagee and holder and owner of the mortgage ; and
he subsequently was permitted to interplead and claim
these rents in the present proceeding. The amount of the
indebtedness to Beard on account of principal, interest,
taxes, and insurance was about $40,000 at the time of the
trial. After the discharge of the receiver, ground-rent and
taxes to the amount of $7,500 and one year's interest were
paid by the holder of the note, and further ground-rent and
taxes for another year were due.

Reilly swears that the building erected on the property
was worth, when he gave his evidence, $60,000. He also
swears that the leasehold estate was then worth $100,000,
and cheap at $80,000. He admits that he tried in vain to
borrow on it $50,000. He did, he says, negotiate a loan
upon it of $35,000, which fell through owing to the failure
of a bank. This, we believe, is an accurate statement of
the facts as they appear in evidence.

We see no sufficient reason for disturbing the decree ren-
dered in this case by the Circuit Court. At the time that
Reilly executed the lease to Wear & Co. he owned the entire
beneficial interest in the premises. The legal title to the
leasehold was in the Guardian Building Company, but
Reilly owned all the stock, and the matter concerned no one
but himself. The validity of the lease has always been
recognized by the Boatmen's Savings-Bank, and the inter-
pleader claims as the assignee of the Boatmen's Savings-
Bank. We do not think that the interpleader should be
heard in this proceeding to deny the validity of the lease
from Reilly to Wear & Co. The Boatmen's Savings Insti-

tution seems to have made no claim to this rent. The receiver, who was collecting it, was discharged with its consent, and no notice whatever was served upon the tenant that the mortgagee claimed the rent until nearly five months after the receiver was discharged, and one month after the Boatmen's Savings Institution had assigned its mortgage to Beard. The rule is that, until the mortgagee enters for breach of condition, the mortgageor owns the estate; and he has a right to lease and to collect the rents, as owner, so long as he is allowed to remain in possession. From the time of the maturity of the note, in September, 1873, until the appointment of a receiver, in December, 1875, more than two years elapsed; from the discharge of the receiver until the commencement of this suit there was a period of three months and a half, but no claim for rent seems to have been made by the mortgagee; and this suit was already pending when the interpleader purchased the mortgage. The purchaser had actual notice that the mortgagee was suffering the mortgageor to collect and appropriate the rents, and was not only passively, but actively, acquiescing in this state of affairs, having consented to the discharge of the receiver. And enquiry of the tenant must at once have developed the fact, if the purchaser of the mortgage did not already know it, that the rents were being paid to the representatives of those who had advanced money on the faith of an impression that no claim for rents would be made by the first encumbrancer up to the time of foreclosure.

The deed of trust securing the claim which the interpleader purchased provides that in case of default the trustee " shall be entitled to immediate possession of said property; and the party of the first part, and its heirs and assigns, after the time of such default, shall hold such premises as a tenant only, from month to month, from and under said party of the second part, at the monthly rent of $——— per month." No demand was made for possession, either

by the trustee, or, in default of a trustee, by the *cestui que trust*, or by the new trustee appointed to take the place of the original trustee after his death. However much the mortgagee may have been entitled to possession, he did not take possession, nor demand possession, nor take any steps to enforce or assert any claim to these rents. It has been repeatedly held in cases of this kind, where the mortgagee was authorized to take possession on default and receive the income, and no claim to possession had been made, or notice given to the tenant, that the rent, up to the time of foreclosure, could not be applied to the payment of the mortgage debt; that possession, being in the mortgageor, draws after it the right to receive and recover the income; and that, until after a regular demand was made, those who received the rents were not bound to account for them. *Galveston R. Co.* v. *Cowdry*, 11 Wall. 482; *Gilman* v. *Telegraph Co.*, 91 U. S. 603; *Douglas* v. *Cline*, Ct. App. Ky., Cent. L. J., Oct. 14, 1876.

The judgment of the Circuit Court is affirmed. All the judges concur.