IN RE THE LIFE ASSOCIATION OF AMERICA ; ROSENBLATT, *Plaintiff in Error*.

1. **Mortgageor and Mortgagee :** POSSESSION: RENTS AND PROFITS. The general rule is that, until default, the mortgageor is entitled to the possession of the mortgaged real estate ; and so long as the mortgagee refrains from taking possession, he has no right to the rents and profits received by the mortgageor.

2. ——— : ——— : ———. The fact that a deed of trust to secure the payment of certain bonds covers not only the real estate, but also the net rents arising therefrom, and contains the usual power of sale upon default in the payment of the bonds or attached coupons, but no stipulation empowering the trustees to take possession, does not take the case out of the general rule. Possession could be taken without express stipulation to that effect, and if refused resort could be had to the courts.

*Error to St. Louis City Circuit Court.*—HON. GEO. W. LUBKE, Judge.

AFFIRMED.

*Geo. W. Taussig* for plaintff in error.

(1) The " net income realized from the property as the rents," was a subject of conveyance to secure payment of the mortgage debt. Rents to be acquired in the future, as other future property, not yet *in esse,* but having a potential existence, are capable of being subject of agreement of sale and of mortgage. *Holroyd v. Marshall,* 10 H. L. Cas. 191 ; *Jessup v. Bridge,* 11 Iowa, 572 ; *Dunham v. Isett,* 15 Iowa, 284 ; *Railroad v. Menzies,* 26 Ill. 121 ; *Pullan v. Railroad,* 5 Biss. 237 ; 2 Story Eq. Jur., secs. 1021, 1231 ; *Legard v. Hodges,* 1 Vesey Jr. 478 ; *Thompson v. Foerstel,* 10 Mo. App. 299 ; *Ex parte Wills,* 2 Cox, 233. (2) In the case at bar, the mortgageor does not assume to pay rent, but conveys in apt and unambiguous terms the net income realized by the mortgageor from the rents, as additional security for the payment of the mortgage bonds. Such a conveyance will be protected and enforced. 2 Rorer on Railroads, 1377 ; Jones on Mort., secs. 771, 772, 160 ; *Dunham v. Isett,* 15 Iowa, 284 ; *Jessup v. Bridge,* 11 Iowa, 572 ; *Pullan v. Railroad,* 5 Biss. 237 ; 1 Hill. on Mort. [4 Ed.] p. 187, sec. 8 ; *Parkhurst v. Railroad,* 19 Md. 472 ; *Addison v. Blythe,* 75 Va. 70 ; *Gilman v. Wills,* 66 Me. 273 ; *Legard v. Hodges,* 3 Brown Ch. 531 ; *Ex parte Wills,* 2 Cox, 233. (3) An agreement in writing to give a mortgage, a mortgage defectively executed, or an imperfect attempt to create a mortgage, or to appropriate specific property to the discharge of a particular debt, will create a mortgage in equity or a specific lien on the property so mortgaged. *McQuie v. Peay,* 58 Mo. 56, 58; *Blackburn v. Tweedie,* 60 Mo. 505 ; *Mueller v. Kaessman,* 84 Mo. 318 ; *Bank v. Taylor,* 62 Mo. 338 ; *Martin v. Nixon,* 92 Mo. 26.

*Hough, Overall & Judson* and *Wm. S. Relfe* for defendant in error

Where it is implied by the terms of the mortgage that the mortgageor is to remain in possession, and receive the rents until the mortgagee takes it, or the proper judicial authority intervenes, such possession gives the mortgageor the right to the whole fund derived from such rents. Jones on Mort., sec. 670 ; *White v. Wear*, 4 Mo. App. 341 ; *Railroad v. Cowdry*, 11 Wall. 482 ; *Gilman v. Tel. Co.*, 91 U. S. 603 ; *Douglass v. Cline*, 12 Ky. 608.

BLACK, J.—The petitioner, M. A. Rosenblatt, filed two applications in the matter of the Life Association of America, asking that the superintendent of insurance be required to pay to him the net rents arising from property known as the Masonic Building. The court declined to make the orders prayed for, or either of them, and he appealed.

These claims for the rents grow out of the following agreed facts : The Masonic Hall Association owned a parcel of ground in St. Louis, and the building thereon ; and on the first of June, 1869, made a deed of trust to secure the payment of one hundred and forty bonds of that date for one thousand dollars each, due in fifteen years, bearing interest at eight per cent. per annum, payable semi-annually on the first days of June and December, as evidenced by attached coupons. The deed of trust, after describing the real estate, goes on to say, "together with the net income realized from said property as the rents thereof, after expenses of collection and repairs shall be reserved therefrom." The deed of trust contains the usual power of sale to be exercised upon the failure of the Masonic Association to pay the bonds and coupons or any of them when due, or upon failure to keep the property insured in the amount of one

hundred and fifty thousand dollars for the benefit of the owners of the bonds.

The Masonic Association made a second and subsequent deed of trust on the property, and at a sale made thereunder, the Life Association purchased the property on the tenth of November, 1873, and at that date, took possession thereof. In 1874, the Life Association erected on a then vacant portion of the lot a new building at a cost of $23,356. After this, and on the tenth of November, 1879, the Life Association was dissolved by an order of the circuit court, and its affairs were then put in the hands of the superintendent of insurance, who held possession of the property to the twenty-eighth of March, 1881, at which date he sold the interest therein owned by the dissolved corporation. In the following April, the property was sold under the first deed of trust and the petitioner became the purchaser at a price which paid about fifty per cent. of the bonds. At that date he owned the bonds and the unpaid coupons.

The first claim of the petitioner is for the rents from the tenth of November, 1873, to the tenth of November, 1879, and the second is for the rents from that date to the twenty-eighth of March, 1881, both claims covering the entire time that the property was in the possession of the Life Association and the superintendent of insurance. In the view we take of the case, it is unnecessary to separate these claims ; and it is sufficient to say that the interest coupons paid by the Life Association and the superintendent, exceed in the aggregate the net rental of the property, including the new building, during the entire time covered by both claims. The first default in payment of coupons occurred on those maturing in December, 1880. No demand was ever made by the petitioner or the trustees in the deed of trust or by the prior holders of the bonds and coupons for rents, or for an accounting therefor, except by the filing of these petitions.

The general rule is that, until default, the mortgageor is entitled to the possession of the mortgaged real property. So long as the mortgagee refrains from taking possession, he has no right to the rents and profits received by the mortgageor. 2 Jones on Mort., sec. 1120. The mortgageor cannot be made to account for the rents for the time past. 1 Hill. on Mort. [4. Ed.] 156. This general rule is perhaps not controverted in this case, but the rule itself must be kept in mind.

The petitioner founds his claim on that clause in the deed of trust, which, after granting and conveying the real estate, says, " together with the net income realized from said property as the rents thereof," etc. In *Gilman v. Tel. Co.*, 91 U. S. 603, the railroad company, to secure its bonds, executed to trustees two mortgages on its road and property, " together with the tolls, rents and profits." The trustees were authorized, on default, to take possession of the mortgaged property. After speaking of the general rule that, until the mortgagee takes possession, the mortgageor is owner and entitled to all the profits made, the court proceeds to say: " It is clearly implied in these mortgages, that the railroad company should hold possession and receive the earnings until the mortgagees should take possession, or the proper judicial authority should interpose. Possession draws after it the right to receive and apply the income. * * * In this condition of things, the whole fund belonged to the company, and was subject to its control. It was, therefore, liable to the creditors of the company as if the mortgages did not exist. They in no wise affected it. If the mortgagees were not satisfied, they had the remedy in their own hands, and could, at any moment, invoke the aid of the law, or interpose themselves without it. They did neither." The doctrine of that case had been before asserted, and has been approved by subsequent adjudications of that court. *Galveston Railroad v. Cowdry* 11 Wall 482;

*American Bridge Co. v. Heidlebach*, 94 U. S. 798. The same principle was applied by the court of appeals to a case where the parties to the deed of trust were individuals. *White v. Wear*, 4 Mo. App. 341.

In this case, it is true, there is no express stipulation that the trustees may take possession on default in payment of interest; but can that make any substantial difference? The deed of trust contemplates, beyond the shadow of a doubt, that the mortgageor is to remain in possession until default; its default in the payment of any of the coupons makes the whole indebtedness due for all the purposes of the trust. Such is the stipulation in the deed. Upon default the mortgagees had a right to the possession without an express stipulation to that effect. If denied to them, they could resort to the courts, and if need be have a receiver appointed to take and collect the rents. We cannot see that the want of such a stipulation in the deed of trust takes this case out of the rule of the cases before cited. Rents are nowhere mentioned save in the granting clause, and a public sale of accrued rents is not contemplated; nor does the deed contemplate an accumulation of rents to meet any possible default. The conclusion is irresistible that the Life Association is not liable for rents while it or the superintendent had possession of the property.

This result disposes of the secondary questions discussed in the briefs. The judgment is affirmed. RAY, J., absent; the other judges concur.