FONTAINE *et al.*, *Appellants*, v. HUDSON, *Collector*, *et al.*

1. Practice : RECORDS OF COURTS. It is not essential to the validity of the records of courts in this state that they should be signed by the judge.

2. ———— : ————: JUDGMENT. The right to an execution follows, *eo instanti*, upon the rendition of the judgment. The rendition of the judgment is the judicial act upon which the execution rests. Its entry upon the record is a mere ministerial act evidencing the judicial act, but not essential to its validity ; it does, not give to the judgment any additional force or effect.

3. ———— : ————: ————. A valid judgment rendered will support and validate an execution issued in conformity therewith, although the formal record evidence of its rendition may not have been in existence at the time the execution issued. It is sufficient if the record evidence is in existence when proof of the judgment becomes necessary.

4. ———— : EQUITY: SUIT TO QUIET TITLE. Parties who claim to be the owners of property sold under execution in a suit to collect back taxes, and who complain that they were not made parties to the tax suit, and that the judgment in such suit was, therefore, a nullity as to them, and the title of the purchaser a cloud upon their title, are not entitled to equitable relief in a suit by them to quiet title. The only question in such case is, who has the paramount legal title.

*Appeal from St. Louis City Circuit Court.*—HON. E. B. ADAMS, Judge.

AFFIRMED.

*E. T. Farish* for appellants.

All actions in tax suits are required to be prosecuted against the owners of the property. R. S., sec. 6837. When the tax suit was brought the parties made defendant are the heirs of Mary O. Smith. It was alleged they were her heirs by descent. If, at the time of bringing the suit, the heirs of Mary O. Smith by descent were dead, and not the owners of the property, the action was not properly brought against the owners of the property, and their interest remained unaffected by any judgment, execution, and sale had in the proceedings. If any of the owners of the property, at the bringing of the tax suit, were not the heirs of Mrs. Smith, and did not derive their interest in said property by descent from her, then the judgment and sale were void, on the ground that the parties in interest were not before the court, and being void in part was necessarily void *in toto.* Freeman on Judgments, secs. '96, 98, 104, 107, 118, 136; *Pomeroy v. Betts,* 31 Mo. 419; *Ins. Co. v. Clover,* 36 Mo. 392; *Rorsh v. Rorsh,* 19 Mo. 441; *Hullett v. Nugent,* 71 Mo. 134; *Bank v. Stumph,* 2 Mo. App. 575; *Decker v. Lidwell,* 3 Mo. App. 586. It may be difficult to ascertain who are the owners of the property, but under our back-tax law they must be ascertained and brought into court, or their interest cannot be affected, as decided in the cases of *Gitchell v. Kreidler,* 12 Mo. App. 497; s. c., 84 Mo. 472; *Stafford v. Fiser,* 82 Mo. 393; *Cowell v. Gray,* 85 Mo. 169. Nor can this proceeding be justified on the theory that, as according to the records in the office of the recorder of

deeds, Mary O. Smith was the owner of the land in con-
troversy, that, therefore, the tax suit was properly
brought against the person appearing by the registry
to be the owner of the land, as held in the case of *State
ex rel. v. Stultz*, 79 Mo. 663. That decision has no
reference to title by descent. A sale on the twenty-
second of May, 1882, under a judgment of which there
was no record till December, 1882, was an irregularity
warranting the interference of the court to set aside such
sale. Freeman on Judgments, sec. 37. No execution
should issue before the entry of judgment. And such
executions have been adjudged to be void and the title
derived therefrom disregarded. *Penniman v. Cole*, 8
Met. 496. So, in Missouri, it is error to issue execution
before motion for new trial is disposed of.

*M. Hilton* for respondents.

(1) The bill shows no grounds for equitable relief,
and was properly dismissed, whatever the merits of the
evidence. *Dunklin Co. v. Clark*, 51 Mo. 60; *Holland
v. Johnson*, 80 Mo. 34, 38. (2) Plaintiffs' claim for relief
rested, in the first instance, in their ownership of the
premises, of which there was an utter failure of proof.
There was no evidence even tending to prove that plain-
tiffs, or either of them, had any title to the lot.
Hence, they were not entitled to a decree. *Moore v.
Townshend*, 102 N. Y. Ct. App. 387, 391. (3) To con-
stitute a cloud on title, color of title must be shown in
the defendant. The voluntary, or involuntary, convey-
ance by a grantor who has no title, does not cast a cloud
upon the title of the true owner. Hence, in the entire
absence of evidence here, that Mary O. Smith, or her
descendants, or any person, for that matter, owned the
property at the time of the tax proceeding, the tax judg-
ment and sheriff's deed cannot be held to cloud the true
title, by whomsoever owned. A purchaser at a tax sale,

under the law of 1877, gets only such title as the defendant in the execution had. *Dunklin Co. v. Clark*, 51 Mo. 60 ; *Watt v. Donnell*, 80 Mo. 195. (4) To maintain a suit to remove a cloud from the title, plaintiff must have been in actual possession when the suit began. This case shows no circumstances excepting it from the rule. *Keame v. Kyne*, 60 Mo. 216 ; *Beadle v. Mead*, 81 Mo. 297 ; *Mason v. Black*, 87 Mo. 329. (5) The issuing of execution in the tax proceeding, and the sale thereunder, before the judgment was formally written up, was an irregularity, at the worst, which might have been grounds of a motion to set aside the sale, if made, at the return term of the execution, but it does not invalidate the sale. The entry of a judgment is simply the best evidence of it. At common law, an execution might issue immediately on the rendition of the judgment, and before its entry, and this feature of the common law has not been changed in this state so as to make the execution void. Freeman on Judg., sec. 38 ; *Holland v. Johnson*, 80 Mo. 34 ; *Fish v. Emerson*, 44 N. Y. Ct. App. 376, 379 ; *Mathews v. Houghton*, 11 Me. 377 ; *Jones v. Hutt*, 60 Mo. 351 ; *Child v. McChesney*, 20 Ia. 434 ; *Walrod v. Shuler*, 2 N. Y. Ct. App. 134 ; *Sears v. Burnham*, 17 N. Y. Ct. App. 445 ; Tidd's Practice, p. 944 ; Freeman on Ex., sec. 24. In this state the execution is simply erroneous that issues, even before a motion for a new trial is disposed of. *Stephens v. Brown*, 56 Mo. 23. (6) The failure of the judge to sign the records of the proceedings could not invalidate the judgment. The statutory provision is merely directory. *Rollins v. Henry*, 78 N. C. 342. (7) There was a literal compliance with the law as to the petition and order of publication. R. S. 1879, secs. 3494, 3499, 6837 ; *State ex rel. v. Staley*, 76 Mo. 158 ; *Hyatt v. Pugsley*, 23 Barb. 303 ; *Cook v. Allen*, 2 Mass. 461. And the court's finding and determination of these matters is binding and

conclusive in all collateral proceedings. *Nash v. Church*, 10 Wis. 303. (8) If, at the date of the institution of the tax suit, the records of the recorder's office showed the land in the name of Mary O. Smith, and she was dead, or if title by adverse possession was in her at her death, and transmitted to her heirs, then the tax proceedings operated to give the court jurisdiction over the actual owners, whether owners by unrecorded deed or inheritance, and to divest them of their title. R. S. 1879, secs. 3499, 3495, 6837 ; *Vance v. Corrigan*, 78 Mo. 94 ; *Watt v. Donnell*, 80 Mo. 195 ; *Brown v. Walker*, 85 Mo. 362 ; *Nash v. Church*, 10 Wis. 303.

BRACE, J.—In an action, commenced in the circuit court of the city of St. Louis to the October term, 1881, thereof, in which the state of Missouri, at the relation of Nathaniel C. Hudson, collector of said city, was plaintiff, and the "unknown heirs of Mary O. Smith" were defendants, for the recovery of delinquent taxes for the year 1879, due on lot ninety-eight, in block 31, in North St. Louis addition, the plaintiff, on the twenty-second of March, 1882, recovered judgment for the amount of taxes found to be due thereon for the year 1879, and costs ; on the seventh of April, 1882, special execution was issued on said judgment, by virtue of which the sheriff, on the twenty-second of May following, sold said real estate to Mary Wing for the sum of five hundred and eighteen dollars. The said Mary Wing received the sheriff's deed for said real estate, and thereafter conveyed the same to Mary E. Tanner, who, on the tenth of June, 1882, gave a deed of trust on said real estate to John. W. Collins, and thereafter made conveyances of said real estate to Anna M. Hilton. On the fifth of April, 1883, the present action was instituted in said circuit court by the plaintiffs, Lamar Fontaine, and Lemuella S. Fontaine, his wife, Mary A. Brickell, W. S. Reid, John W. Reid, and M. M. Puroyer, against the defendants, the said Nathaniel

C. Hudson, collector, Mary Wing, Mary E. Tanner, John W. Collins, and Anna M. Hilton and Mathew Hilton, husband, of said Anna M., in which the plaintiffs claim that they are, and were at the date of the institution of said back-tax suit, the owners of said real estate, but were not made parties thereto, and had no notice thereof, and by which they seek to have set aside and cancelled the judgment rendered in said suit, the sale made by the sheriff thereunder, the sheriff's deed to Mary Wing, and the subsequent conveyances to the other defendants, for the reason that the same are a cloud upon the title of plaintiffs to said property. The defendants, in their answer, denied generally the allegations of the petition; the case was submitted to the court on the evidence introduced by plaintiff, the defendants offering none, and upon the hearing, the plaintiffs' bill was dismissed and judgment rendered against them for costs, from which they appeal, assigning for error that the judgment was against the law and the evidence in the case. The material facts disclosed by plaintiff's evidence, as it appears in the record before us, are substantially as follows:

W. C. Jamison testified that in the year 1844 or 1845, M. C. Cheatem, who, with H. B. Brickell, were trustees of the property in controversy, under a conveyance made by Mary O. Smith in 1843, employed him to look after the lot and pay the taxes on it; that for a time Mr. Cheatem sent him the money to pay the taxes; that for some years he continued to pay the taxes on it, till finally he leased it to Messrs. Schulenberg & Boeckler for the taxes; that he rented it to them between 1850 and 1860, they agreeing to pay the taxes; that thereafter he gave the matter no further attention, except that once he tried to sell the lot, and drew a deed conveying the same, which deed was signed by M. C. Cheatem and H. B. Brickell as grantors; that in all he did he acted for Cheatem and knew no one else represented or interested in the lot; that it was assessed in the name of M. C. Cheatem from

1862 down to and including 1879, and after that, in 1880, 1881, and 1882, to Lamar Fontaine.

Chas. W. Behrens testified that he was secretary of the Schulenberg & Boeckler Lumber Company; that he has known the property in question for fifteen or sixteen years; that it was used by, and in the possession of, A. Boeckler & Company, then of Schulenberg & Boeckler, and then of the Schulenberg & Boeckler Lumber Company; that these parties used said lot in connection with their mill and for piling lumber; that they had always paid the taxes, except for 1879.

A. Boeckler testified that he was president of the Schulenberg & Boeckler Lumber Company; that that company succeeded to the business of Schulenberg & Boeckler; that Brotherton & Dryden first had possession of the lot from 1858 to 1864; that they were succeeded in the possession by Dryden, Overstoltz & Company, in 1864, and they by A. Boeckler & Company, in 1869; and the latter concern afterwards by Schulenberg & Boeckler, and they by the Lumber Company; that from 1864 to 1869, the lot was rented, the occupants agreeing to pay the taxes as rent; that in 1869, A. Boeckler & Company took it and continued holding and using the same as their predecessors, and, ever since, the successors aforesaid of A. Boeckler & Company have continued to hold and use the lot; that the Lumber Company and their predecessors had always paid the taxes, except those of 1879, which were overlooked; and, on cross-examination, this witness, testified: "We never had a lease from Cheatem; knew that Jamison had control of the lot; never had a contract with Jamison or Cheatem directly. We took possession and paid the taxes; it was so done by Dryden, Overstoltz & Company, and we stepped in their shoes. I never saw or heard of Mary O. Smith before the tax sale, nor of the plaintiffs in this suit."

It was further shown by plaintiffs in evidence, that Mary O. Smith died in May, 1868, leaving as her heirs,

Fontaine v. Hudson.

two daughters, Mrs. E. Brickell and Mrs. Bethunia E. Cheatem, wife of M. C. Cheatem, and a granddaughter, Mrs. Elizabeth House; that Mrs. House died on the twenty-third day of August, 1868, without issue, leaving as her heirs her father, W. S. Reid, her half-brother, J. W. Reid, and her half-sister, M. M. Puroyer, plaintiffs herein ; that Mrs. E. Brickell died on the third day of July, 1877, leaving Mary A. Brickell, Lemuella S. Fontaine, plaintiffs herein, and Agnes Miller her heirs-at-law ; that M. C. Cheatem died in November, 1873, and Mrs. Bethunia C. Cheatem died on the twenty-seventh day of December, 1879, leaving as her heirs, Agnes S. Perkins, Sallie P. Cheatem, Margaret C. Barksdale, and N. P. S. Cheatem.

The action of the court in excluding the deeds offered in evidence from some of the heirs-at-law of Mary O. Smith, who are not, to some of those who are, plaintiffs in the cause, not having been complained of in the motion for a new trial is not before us for review. The foregoing oral testimony is the only evidence in the record tending to show that plaintiffs had title to, or possession of, the aforesaid lot 98, at the time this suit was instituted. In the petition in the back-tax suit it was alleged that the defendants, "the unknown heirs of Mary O. Smith are the owners of said real estate by descent, and that their names and places of residence cannot be inserted herein because they are unknown to plaintiff." The order of publication followed the petition ; it was shown by the deputy clerk that the judgment therein was not written up until December 17, 1882 ; that the only minutes kept of the proceedings were the memoranda endorsed on the papers and kept in the minute-book, and that the record of the proceedings of the court in the back-tax cases was never signed by any of the judges. In regard to this last evidence, it is only necessary to say that it is not essential to the validity of records of

courts in this state that they should be signed by the judge (*Platte County v. Marshall*, 10 Mo. 346 ), and that the party in whose favor any judgment is rendered may have execution in conformity therewith (R. S. 1879, sec. 2335); that the right to the execution follows, *eo instanti*, upon the rendition of the judgment; the rendition of the judgment is the judicial act upon which the execution rests, its entry upon the record is a mere ministerial act evidencing the judicial act, but not essential to its validity, or giving to the judgment any additional force or efficacy. A valid judgment rendered will support and validate an execution issued in conformity therewith, although the formal record evidence of its rendition may not have been in existence at the time the execution issued. It is sufficient if the record evidence is in existence when proof of the judgment becomes necessary.

This baseless attack on the execution in the back-tax suit being eliminated, we may now enter upon a consideration of the real case presented in the pleadings and evidence. With this excision, the case presented in plaintiff's petition is : That plaintiffs are the owners of, *i. e.*, hold the legal title to, the lot in question ; that they are in possession of the same, and that the defendants have spread upon the public records conveyances purporting to vest in certain of the defendants the legal title to said lot under a judgment, execution, sale, and sheriff's deed, which are invalid for the reason that the plaintiffs, the owners of said lot, were not made parties to the suit in which such judgment was rendered. The fact that the plaintiffs were not made parties to the suit, could not, *per se*, in any way vitiate, or affect, the validity of the judgment, or give them any show of right to have it cancelled ; if they had been made parties to the suit, and an invalid judgment had been rendered therein ; or, if upon the face of the proceedings it appeared that they had been made parties to the suit,

when, in fact, they had not been, then a case would have been made calling for the interposition of a court of equity to avoid the judgment, and to declare that that muniment of title which, upon its face, appeared to be a verity, was, in point of fact, a falsity, and, therefore, a nullity. If, however, plaintiffs were not made parties to the suit in which the judgment was rendered, their interest in the property was in no way affected by it, although the judgment may have been 'good enough in itself, valid and binding on those made parties, and duly served, if any such there were. *As to plaintiffs,* it was an absolute nullity on its face, could cast no cloud upon their title, and afforded no ground for an action by them to set aside such judgment, or declare it void.

The case, presented in this way, shows that this proceeding is an attempt, under the guise of a bill in equity to remove a cloud, to try the legal title to the premises. If plaintiffs have any title at all to the premises, it is a legal title; if defendants have any title, it is a legal title apparent upon the face of the record. The only question to be determined is, which has the paramount legal title. The case presents no feature calling for the interposition of the extraordinary power of a court of equity. It is not even averred in the petition, nor is there any evidence tending to show, that defendants ever have, or are asserting, any claim or title to the premises, and, for all that appears in this record, they may make no claim to the property. At all events, the law has placed at the service of plaintiffs an action, if they are in possession as they claim, by which they could ascertain that fact, and by which the defendants. could be required, if they made any such claim, to assert it in an action of ejectment, or forever after hold their peace; and if they made none, to make such a disclaimer without costs as would put plaintiffs' title as to them forever at rest. This was the

action that plaintiffs, if in possession, ought to have resorted to ; for, whilst this action does not supersede the equitable action to remove a cloud from title in cases properly calling for the exercise of equitable jurisdiction, it is the only one that plaintiffs show themselves entitled to upon the facts stated in their petition.

But could it be conceded that the legal title to the premises could be tried in this equitable proceeding, it is not perceived how plaintiffs' action could be maintained on the evidence in the case. It will be observed that plaintiffs, to show title in themselves, simply trace the relationship between themselves and Mary O. Smith, and if they have shown any title at all to the premises it is such title as they have acquired by descent from Mary O. Smith. If she had no title, then plaintiffs have none, and there is not a scintilla of evidence tending to show that Mary O. Smith ever had any title to the lot, and in this connection it may be remarked that, upon the case made solely by the plaintiffs (for the defendants claimed nothing and proved nothing), if Mary O. Smith had no title, "her unknown heirs by descent" had none. Defendants acquired none under the tax sale and sheriff's deed, and the alleged cloud is in the sky, this whole litigation *in nubibus;* nor have the plaintiffs succeeded in bringing it to earth by showing possession of the premises. There is no evidence tending to show that Mary O. Smith, or plaintiffs, who claim under her, have ever been in possession. On the contrary, it appears from the evidence, that for more than twenty-five years prior, and up to the time of the institution of this suit, the lot had been in the actual and continuous possession of parties not holding under Mary O. Smith, or either of the plaintiffs herein, but who, if they were tenants of anybody, were tenants of M. C. Cheatem, or of M. C. Cheatem and H. B. Brickell, and there is nothing in the evidence tending to show that in the letting of the lot to the first

occupants by Jamison, the agent of Brickell and Cheatem, which is the only letting shown, that either he or they were acting for, or on behalf of, Mary O. Smith. On the contrary, Jamison testifies that he acted for Cheatem only, and knew no one else as having an interest in the lot, and Mr. Boeckler, who was a member of all the firms, and president of the corporation in possession of the lot for twenty years before this suit was brought, testified that he never heard of Mary O. Smith, nor of the plaintiffs in this suit, before the tax sale; and to further negative the idea that Cheatem, in this letting, was acting for Mary O. Smith, it is shown that prior thereto she had conveyed her legal title, if any she had, to Cheatem and Brickell in trust, but upon what trust does not appear, and that they, after such conveyance, asserted title in themselves by signing a deed to the property as grantors, in view of a contemplated sale by their agent. The plaintiffs having failed to show either title to, or possession of, the premises, were not in position to attack the proceedings in the back-tax suit in any form of proceedings, either legal or equitable, and their bill was properly dismissed.

The judgment of the circuit court is affirmed. All concur; Norton, C. J., specially.