FONTAINE *et al., Appellants and Respondents,* v. THE SCHULENBURG & BOECKLER LUMBER COMPANY.

DIVISION ONE.

1. **Lease:** AGREEMENT BY TENANT TO PAY TAXES: MEASURE OF DAMAGES.  Where plaintiffs leased a lot of defendant who agreed to pay the taxes thereon as rent for the same and neglected to do so, whereupon the property was sold for taxes and plaintiffs lost their title, the proper measure of damages is the amount of the taxes unpaid with interest thereon.

2. ———: ———: ———.  Where the defendant was a corporation which "stepped into the shoes" of the former lessees, succeeding them in the business and occupancy of the premises, defendant became liable for the taxes that became due while its predecessor was in possession.

3. ———: ———: LESSOR'S TITLE.  Where the defendant and the prior lessees occupied under a written lease from a trustee whose title was not disputed by defendant, it was sufficient for plaintiffs to show that they held the title conveyed to such trustee.

4. **Mortgage.**  A conveyance to one in trust to indemnify sureties on a bond executed by the grantor, and binding the latter at her death to pay a certain sum to the heirs of her deceased husband, is a mortgage.

Fontaine v. The Schulenburg & Boeckler Lumber Co.

5. ———: POSSESSION AND RENTS. The mortgagor or his heirs are entitled to the possession and rents until the mortgagee enters for condition broken.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*E. T. Farish* for plaintiffs, appellants.

*Rudolph Schulenburg* for defendant, appellant.

(1)   The court below erred in refusing defendant's instruction, that plaintiffs cannot recover in this action. (2)   The court also erred in refusing defendant's instruction, that, if plaintiffs acquired their title to the lot by the deeds of 1883 and 1884, the plaintiffs cannot recover in this action. (3)   The court also erred in refusing defendant's instruction to the effect, that if Mary O. Smith conveyed the lot in question to C. Cheatam by her deed of December 10, 1842, offered in evidence by plaintiffs, the title so vested in him was not affected by the tax sale of 1882. (4)   If the defendant is liable at all, it is only to the extent of the taxes paid in 1879 with interest. If it is true that defendant covenanted to pay the taxes, such covenant creates a debt on the part of the defendant, nothing less, nothing more; and, hence, the measure of damages is the amount of the debt with interest. *Trinity Church v. Higgins*, 48 N. Y. 532; *Hackett v. Richards*, 3 E. D. Smith (N. Y.) C. P. 13; 2 Sedgwick on Damages, sec. 789.

BLACK, J.—The plaintiffs aver that they were the owners of lot 98 in block 31 of North St. Louis; that the defendant corporation occupied the lot in 1879 as their tenant, under an agreement to pay the taxes

assessed thereon as a rental therefor; that the defendant suffered and allowed the lot to be sold for the taxes of 1879, amounting to $64, whereby they lost their property; that the lot was of the value of $5,000, and for this amount they ask judgment. The court gave judgment for plaintiffs for $102.07, the amount of the taxes and interests thereon, and from that judgment both sides appealed.

The evidence shows that on the tenth of December, 1842, Mary O. Smith by her deed of that date conveyed this and another lot to Major C. Cheatam in trust for Henry B. Brickell and Lemuel Smith, Jr. This deed states that Brickell and Smith are bound as the sureties of Mary O. Smith on a bond given by her for the use and benefit of the heirs of Nicholas P. Smith, for the sum of $4,315 due at the death of said Mary O. Smith; that owing to the amount of debts against her the sureties will in all probability have to pay the bond at her death; that to indemnify them from pecuniary harm she conveys the lot to Cheatam "in trust, however, as aforesaid, to the intent and purpose that said Henry B. Brickell and Lemuel Smith, Jr., shall have the possession of the lots, and the exclusive control and management of the same, and be entitled to all the profits and rents arising from the rent or improvement of the said lot; and the said Major C. Cheatam shall, at the death of said Mary C. Smith, or at any time after her death, as the said Henry B. Brickell and Lemuel Smith, Jr., may appoint, make and convey such title as is vested in him by this instrument to any person or persons whom the said Henry B. Brickell and Lemuel Smith, Jr., may designate."

Brickell and Major Cheatam married daughters of Mary O. Smith, and Lemuel Smith, Jr., was her son. Lemuel Smith, Jr., died in 1843, Brickell died prior to 1868, Mary O. Smith died in May, 1868, and Major

Cheatam died in 1873. The plaintiffs in this case are not the persons upon whom descent was cast at the death of Mary O. Smith, as is alleged in the petition; but they are heirs of, and purchasers from, the heirs of such persons. Between 1855 and 1860, Major Cheatam, as such trustee, through his attorney in fact, leased the lot to the firm of Brotherton & Dryden for a period of fifteen years, the lessees agreeing to pay the taxes on the property for the use of the same. This firm occupied the lot for a lumber yard, and paid the taxes thereon until 1864. The same business was continued by the following firms which succeeded each other in the following order: Dryden, Overstoll & Co.; Dryden, Wagner & Co.; A. Boeckler & Co. The last firm was succeeded by the defendant Schulenburg & Boeckler Lumber Company, a corporation organized on the twelfth of February, 1880. These several firms occupied the property for the same business, and paid the taxes regularly down to the year 1879. The defendant corporation continued to use the lot for like purposes. Mr. Boeckler, the president of the defendant and a member of the firm of A. Boeckler & Co., testified, that that firm occupied the lot in 1879; that the failure to pay the taxes for that year was due to some oversight; that the defendant paid taxes on the lot after 1879; that the prior firms had paid the taxes, and that the defendant "just went into their shoes."

In 1881, the collector brought suit against the unknown heirs of Mary O. Smith to enforce the payment of the taxes for 1879. The defendants in that case, being all non-residents, were notified by publication, and a judgment was rendered by default for $63.40. The property was sold in 1882 to one Mary Wing for $518, under an execution issued on the special tax judgment.

I.   Conceding for the present that the defendant is

liable, and liable to these plaintiffs as their tenant for a failure to pay the taxes for 1879, the question then arises, what is the measure of damages? The plaintiffs contend that they should have been awarded the full value of the lot, while the trial court held that they could not, in any event, recover more than the amount of the unpaid taxes and interest; and, hence, that court did not pass upon the question of the validity of the tax judgment and sale thereunder. The averment of the petition is, and the evidence tends to show no more, that the defendant agreed to pay the taxes in lieu of rent. Such, then, is the covenant for the breach of which damages to the full value of the lot are demanded.

Mr. Sedgwick, after alluding to *Hadley v. Baxadall*, and subsequent American and English cases, reaches this conclusion, "that the plaintiff recovers such damages as are proximate and natural, and that, in ascertaining what are natural consequences, we must take into account all the circumstances of the case, including all facts bearing on the question which were in the knowledge of both parties, even though these be such as would not necessarily, without such knowledge, enter into it." 1 Sedgwick on Damages [8 Ed.] sec. 149. From this statement of the general rule as to the measure of damages in case of a breach of contract, it is evident we must look to its application in particular cases for a definite guide.

In *Rector v. Higgins*, 48 N. Y. 532, the tenant covenanted to pay and discharge all taxes and assessments. Having failed to pay assessments made by the city authorities to a large amount, the lessor brought suit and was allowed to recover the full amount of the assessments though he had not paid any part of them. The covenant, it was held, was not one simply of indemnity, but a positive agreement to pay the assess-

ments, and was broken when the defendant neglected to pay the taxes. "Upon the lessees' neglect to pay, a cause of action at once accrues to the lessor, and he may either pay the tax and sue the lessee for the amount, or may sue without first so paying it himself." Taylor on Landlord & Tenant [8 Ed.] sec. 399. Indeed, it may be stated as a general rule that, when the defendant contracts to pay a debt and fails to do so, the measure of damages is the amount of the debt; but, when the contract is one of indemnity only, damages must be sustained before a recovery can be had. *Rector v. Higgins, supra; Ham v. Hill,* 29 Mo. 275; *Rowsey v. Lynch,* 61 Mo. 560.

The defendant's agreement was not one to protect and save plaintiffs harmless from all the consequences that might flow from the non-payment of the taxes. That is not its scope, object or purpose. It was an agreement to pay the taxes when due. The amount to be paid was fixed as soon as the taxes were levied, and the agreement was broken as soon as they became due and were not paid. The plaintiffs, as we have seen, could have then maintained a suit for the amount of the taxes, without first paying them; for that amount became a debt, and the damages are the same as allowed in other cases of non-payment of debts, namely, interest.

The plaintiffs were non-residents, it is true, and it does not appear that they had any actual notice that these taxes had not been paid; but they were bound to know that taxes would be levied annually on their property, and that the property would be bound for the payment of them. They failed to give the matter any attention; and the defendant and the firm of A. Boeckler & Co. failed to pay them by an oversight, due, it would seem, to a change of clerks. We think it follows from what has been said as to the legal effect of

the agreement, that the plaintiffs had no right to rely upon the contract as one of indemnity in case of a sale of the property.

We are cited to *State ex rel. Kearney v. Finn*, 87 Mo. 312, as leading to a different result. That was a suit against the sheriff for a false return, and is wholly inapplicable to the case in hand. *Blood v. Wilkins*, 43 Iowa, 565, is more in point. It was held in that case that where money is furnished to an agent to pay taxes and the agent fails to pay them, by reason of which the land is lost, that the measure of damages may be the money furnished, with interest, or the value of the land, according to circumstances; that, if the land-owner is informed of his agent's failure to pay the taxes, his damages will be the money furnished with interest, but if he has no such knowledge, and the land is lost solely through the fault of the agent, then the agent will be liable for the value of the land. The duties of an agent intrusted with money to pay taxes are different from the duties of a tenant who agrees simply to pay taxes in lieu of rents. In the former case the land-owner has a right to rely upon his agent to pay them, for it is for that particular purpose that the agent is appointed; whilst in the latter case the land-owner must see to it that the taxes are paid.

The court, we conclude, gave correct instructions as to the measure of damages. The question whether the tax judgment and sale thereunder divested the plaintiffs of their title is, therefore, immaterial in this case, and the court did not err in failing to rule upon that question.

II. The defendant, by its appeal, contends that it is not liable to the plaintiffs in any amount, and the question under this claim arises on the refusal of the court to give instructions to the following effect:

"*First.* Under the pleadings and the evidence the plaintiffs cannot recover.

"*Second.* The defendant cannot be held liable for any tax assessed prior to the time it became incorporated and occupied the lot.

"*Third.* If the plaintiffs acquired title by the deeds dated in 1883 and 1884, read in evidence, then they cannot recover.

"*Fourth.* If Mary O. Smith conveyed the lot to C. Cheatam by her deed of December 10, 1842, the title so vested in him was not affected by the tax sale."

We have already said it was not necessary for the trial court, for any of the purposes of this action, to pass upon the validity of the tax sale, and, hence, this fourth instruction was properly refused.

The third instruction has no evidence to support it. The plaintiffs do not claim alone under these deeds. For a part of their title they claim by descent from the heirs of Mary O. Smith. It is for an undivided interest only that they claim under the deeds. Besides this, the deed dated the first of July, 1884, professes to be in correction of a prior deed from the same grantors to the same grantees, dated the fourth of March, 1878; and the deed of the ninth of October, 1883, was made to correct the acknowledgment of a deed between the same parties dated April 17, 1879; and the other one dated the twenty-third of April, 1883, was made to correct a deed dated twenty-sixth of April, 1879. For all the purposes of this case these deeds made in 1883 and 1884 relate back to the dates of the deeds which they were designed to correct, and the plaintiffs are to be regarded as acquiring the title at the dates of the original deeds. They, therefore, appear to have been the owners when the taxes accrued. At least nothing to the contrary is shown by the record, or pointed out by counsel.

As to the second refused instruction, the evidence shows that A. Boeckler & Co. occupied the lot during and prior to 1879, and became bound to pay the taxes for that year. The members of that firm and other persons formed the defendant corporation in February, 1880, which was after the taxes for 1879 became due. But this is not all. Boeckler, the president of the defendant, shows that the several firms succeeded each other in the business and occupancy of the lot, and that there was some change in the membership of each firm, and he then says we just stepped into their shoes. From this statement and the general tenor of the evidence it may be fairly inferred that the defendant assumed the unpaid debts of the firm, certainly such as the payment of these taxes. It may be true that in the absence of this evidence the defendant would not be liable for these taxes, but in view of this evidence the instruction was properly refused. It is really no more than a demurrer to the evidence.

It is again insisted that the first refused instruction should have been given, because the plaintiffs failed to show any title whatever by deeds or otherwise.

The evidence certainly tends to show that the defendant and the prior firms occupied the lot under a written lease from Cheatam. Though the lease had been lost, and was not produced on the trial, still the evidence of the attorney in fact who signed it is clear that it was made in the name of Cheatam as trustee. The defendant cannot and does not dispute the title of Cheatam as trustee, and it is enough for the plaintiffs to show that they hold the title conveyed to him. For all the purposes of this case it was not necessary for them to go back and show title in Mary O. Smith.

The question, therefore, is, whether this deed to Cheatam in trust conveyed away the whole title of Mary O. Smith, or whether it is simply an instrument in the

nature of a mortgage. It is clearly nothing more than a conveyance to Cheatham in trust to protect and save harmless the sureties on the bond given by Mary O. Smith, binding her at her death to pay over $4,315 to the heirs of her deceased husband, N. P. Smith. The deed of trust is in substance and effect a mortgage. There has been no sale under it, nor has it ever been foreclosed. Indeed, it does not appear that the sureties ever paid a farthing on account of the bond. Nor does it appear that the sureties ever had possession of the property. Even if the deed of trust is still a subsisting security, still the position of the plaintiffs is that of heirs of a mortgagor, and they are entitled to possession and the rents until the mortgagee enters for condition broken. *In re Life Ass'n of America*, 96 Mo. 632. The plaintiffs being entitled to the rents, it must follow that they have a right to recover the amount of these taxes which should have been paid in lieu of rents.

With the conclusions before stated it is unnecessary to consider the other questions presented by the briefs. The judgment is affirmed. All concur.