BRICKELL et al. v. FARRELL et al.

(Circuit Court, E. D. Missouri, E. D. June 24, 1897.)

No. 4,024.

1. TAX SALES—SUIT BY STATE TO ENFORCE TAX LIEN—AFFIDAVIT FOR NOTICE BY PUBLICATION.

The attorney employed, pursuant to Rev. St. Mo. 1889, § 7681, to prosecute a suit by the state to enforce its lien for delinquent taxes, is the proper person to make the affidavit prerequisite to an order for publication of notice to unknown owners.

2. PROCESS—PUBLICATION—UNKNOWN PARTIES.

Under Rev. St. Mo. 1889, § 2027, which authorizes an order for publication, as to unknown parties interested in the subject-matter, to be made where the petition alleges that there are such persons, and describes "the interest of such persons, and how derived," allegations that the unknown heirs of a person named are the owners of certain real estate by descent sufficiently describe their interest, and how it was derived.

3. TAX SALES — SUIT TO ENFORCE TAX LIEN—BENEFICIARIES IN TRUST DEED AS PARTIES.

Where there has been no foreclosure nor sale under a trust deed of real estate, a suit to enforce the state's lien for taxes on the property is properly brought against the heirs of the deceased grantor, and not against the beneficiaries in the deed.

4. ESTOPPEL—ACCEPTING SURPLUS PROCEEDS OF TAX SALE—RECOVERY OF DAMAGES.

Where the owners of land sold under a judgment for delinquent taxes, who were served by publication, afterwards instituted a suit to set aside the deed so made, which suit was decided adversely to them, and they subsequently accepted a surplus realized on said sale, and also recovered damages for the loss of said real estate, against a lessee who had negligently failed to pay the taxes for which the sale was made, such owners are conclusively estopped from denying the validity of the title of the grantee in such tax deed.

This was an action in ejectment, brought by Mary A. Brickell and others against James P. Farrell and others.

Henry T. Kent and James W. Williams, for plaintiffs.
Daniel Dillon and E. P. Johnson, for defendants.

ADAMS, District Judge. This is an action in ejectment. The plaintiffs sue for the possession of a lot of ground in the city of St. Louis, Mo., and in their proof deraign title from one Mary O. Smith, whose first conveyance of the lot in controversy was by deed dated December 10, 1842. The defendants deny the validity of plaintiffs' title, and set up in their abstract and at the trial two other defenses: First. That the general taxes on the lot in controversy became delinquent for the year 1879; that on September 7, 1881, suit was instituted in the circuit court of St. Louis by the state of Missouri at the relation of the then collector of the revenue, N. C. Hudson, against the unknown heirs of Mary O. Smith, for the enforcement of the state's lien for such delinquent taxes; that an order of publication was duly made and executed, subjecting such unknown heirs to the result of the suit; that such proceedings were had in said suit that on March 22, 1882, judgment was rendered against said lot for the delinquent taxes, and the same was duly sold by deed of the sheriff of St. Louis, bearing date April 23, 1882, to Mary Wing, from whom

the defendants deraign their title. And, second, that if the deed to Mary Wing was void, the plaintiffs, by receiving the surplus proceeds of sale of said lot, are now estopped from denying its validity. In my view of the case, it is not necessary to examine into or pass upon the various objections made to the several deeds introduced in evidence by plaintiffs, in making proof of their title from Mary O. Smith. The case may be more readily disposed of by a consideration of the merits of the title of the defendants under the proceeding referred to for the enforcement of the state's lien for taxes. This proceeding will hereafter, for the sake of brevity, be referred to as the "State's Suit." The statutes of Missouri in force in the year 1881 (section 7682, Rev. St. 1889) provide, in substance, that the owners of property sought to be charged with the lien for delinquent taxes must be made parties to the suit, and, as construed by the supreme court of Missouri in repeated cases, and notably in Blevins v. Smith, 104 Mo 583, 16 S. W. 213, the word "owner," as used in the statutes relating to the collection of delinquent taxes, does not necessarily mean the actual owner. If the person or persons who, according to the land records, appear to be the owners, are made parties to the litigation, it is sufficient, even though there may be unrecorded title in other persons. There is also a provision found in the same section of the statute for suits against "nonresident unknown parties, or other owners on whom service cannot be had by ordinary summons." In the prosecution of suits against such parties the general laws of the state relating to practice and proceedings in civil cases are applicable. Section 2027, Rev. St. 1889, provides as follows:

"If any person shall allege in his petition under oath that there are, or that he verily believes there are persons interested in the subject matter of the petition, whose names he cannot insert therein because they are unknown to him, and shall describe the interest of such persons and how derived, so far as his knowledge extends, the court, or the judge, or clerk thereof in vacation, shall make an order as in case of non-residents, reciting moreover all allegations in relation to the interest of such unknown parties."

At the institution of the state's suit against the unknown heirs of Mary O. Smith, in the year 1881, it appears to have been known to the state of Missouri that Mary O. Smith herself was dead. She is shown by the proof to have died in 1868. A deed on record in the recorder's office of the city of St. Louis, bearing date December 10, 1842, conveyed the lot of ground in controversy from Mary O. Smith to one Cheatham, subject to a certain trust therein mentioned, concerning which the supreme court of Missouri, in the case of Fontaine v. Lumber Co., 109 Mo. 63, 18 S. W. 1149, says:

"The question, therefore, is whether this deed to Cheatham in trust conveyed away the whole title of Mary O. Smith, or whether it is simply an instrument in the nature of a mortgage. It is clearly nothing more than a conveyance to Cheatham, in trust, to protect and save harmless the sureties on the bond given by Mary O. Smith, binding her at her death to pay over $4.315 to the heirs of her deceased husband, N. P. Smith. The deed of trust is, in substance and effect, a mortgage. There never has been a sale under it, nor has it ever been foreclosed."

Whatever effect this deed might have had on the title to the lot in 1881, it, and all remedy under it, are now effectually barred by limitation. Sess. Acts Mo. 1891, p. 184. This deed of trust, it ap-

pears, was the only conveyance of record affecting Mary O. Smith's title at the time the state's suit for taxes was instituted. The state's suit, therefore, was against the owners of the lot,—that is to say, against the heirs of the deceased last owner of record,—and affected the title to the lot as against everybody except the beneficiaries in the last mentioned, or Cheatham, deed of trust, who were not made parties, but whose rights are now barred by limitation, as already seen. Accordingly, the entire title must now be held to have been subject to the state's suit, and the only question for consideration is whether the proceedings in the suit, and the deed to Mary Wing thereunder, are void. Plaintiffs' attorneys attack these proceedings and this deed on three grounds: First, because the affidavit on which the order of publication issued against the unknown heirs of Mary O. Smith was made by the attorney in charge of the suit, and not by the collector himself; second, because the interest of the unknown heirs was not properly described, or how the same was derived was not properly stated; and, third, because Mary O. Smith had no title to the lot in controversy at the time of her death, and the suit should have been against the heirs of Henry P. Brickell and the devisees of Lemuel Smith, Jr., deceased, who were the beneficiaries in the Cheatham deed of trust. Answering the first of these objections, it is to be observed that section 7681, Rev. St. Mo. 1889, was in force at the time the state's suit was instituted. According to its provisions, the collector had the power, with the approval of the mayor of the city of St. Louis, to employ such attorneys as he deemed necessary for the purpose of prosecuting suits for delinquent taxes. It appears that, pursuant to the provisions of this statute, the collector had employed M. B. Jonas, Esq. This attorney signed the petition against the unknown heirs of Mary O. Smith, and in it averred as follows:

"Plaintiff further states that said unknown heirs of Mary O. Smith, the defendants herein, are the owners of the following described real estate, situate, lying, and being within the said city of St. Louis, to wit. [Here the lot of ground is described.] Plaintiff further says that said heirs of Mary O. Smith are the owners of said real estate by descent, and that their names and places of residence cannot be inserted herein, because they are unknown to the plaintiff."

This petition, at least all thereof relating to the unknown heirs of Mary O. Smith, is sworn to by M. B. Jonas. I cannot agree to the first criticism of the defendants' counsel. The state's suit was brought for the purpose of enforcing the state's lien for taxes. The state was the beneficial party plaintiff. In its corporate capacity, it was unable to make an affidavit. Therefore the provisions of section 2027, supra, which require a plaintiff to make the affidavit, could not be literally complied with. The state of Missouri cannot make affidavits. Necessarily, therefore, in such cases some agent must do it for her. All corporations, of whatsoever kind, act through agents. The statute (section 7681, supra) makes provision for an attorney to prosecute suits for delinquent taxes. This attorney is the state's agent, and, in my opinion, is the proper person to make the affidavit concerning nonresidents, or concerning unknown heirs, prerequisite to orders of publication. He is the one who must, of necessity make, or be entirely familiar with, the investigation con-

cerning the title to the land, and the interest of the parties therein. I therefore hold that the affidavit as to the unknown heirs of Mary O. Smith, and their residence, was properly made by M. B. Jonas, the attorney for the state in the suit brought against them, and the fact that such affidavit was not made by the collector, N. C. Hudson, or any person other than M. B. Jonas, does not vitiate the proceedings.

Again, it is argued that the affidavit made to secure the order of publication was not sufficient, in that it did not properly describe the interest of the unknown heirs of Mary O. Smith in and to the lot in controversy, or state how it was derived, as required by section 2027, supra. This section requires, as a condition precedent to making an order of publication against unknown persons in a suit for the enforcement of the state's lien for taxes, that the petition shall, under oath, "describe the interest of such persons, and how derived," so far as the knowledge of the plaintiff extends. A reference to the petition and affidavit, already sufficiently quoted, shows that the unknown heirs of Mary O. Smith are declared to be the owners of the real estate by descent. To say that one is "the owner" of land is, in my opinion, a comprehensive and sufficient description of his interest. It means, unless modified by averment, that he is the owner in fee simple. By way of designating the derivation of the title, as is required by the statute, supra, it is said, in effect, that the unknown persons against whom the order of publication was asked were the heirs of Mary O. Smith, and that they inherited their title to the lot in controversy from Mary O. Smith. The language of the affidavit is equivalent to saying that the defendants were unknown persons, who have acquired the land in controversy by descent from Mary O. Smith. I think this is a sufficient statement of how their interest was derived. The plaintiffs in this case are, I believe, the grandchildren of Mary O. Smith. Notwithstanding this fact, they derived their title to the lot in controversy, and in 1881, at the time of the institution of the state's suit, held the same, as an inheritance from Mary O. Smith, whether they were children or grandchildren.

Defendants next contend that Mary O. Smith had no title to said lot at the time of her death, and that, therefore, an order of publication against her unknown heirs did not affect the title of anybody. Defendants' counsel contend that the title at that time was vested in Henry Brickell, and the devisees of Lemuel Smith, Jr., deceased, who were the beneficiaries named in the deed of Mary O. Smith to C. Cheatham, of date December 10, 1842, already referred to. I have already considered this conveyance in direct connection with another phase of this case, and deem it sufficient now to say that I agree with the construction placed upon it by the supreme court of Missouri in the case of Fontaine v. Lumber Co., supra, and I accordingly hold that the legal title to the lot in question stood in Mary O. Smith at the time of her death, subject only to the obligations in the nature of a mortgage, now barred by limitation; and that the title of her heirs, the plaintiffs in this suit, was effectually destroyed by the proceedings in the state's suit for taxes.

There is another ground on which I believe this case can be satisfactorily disposed of, and that is that the plaintiffs are estopped from

denying the validity of the defendants' title under the Mary Wing purchase. The facts are as follows: About a year after the judgment and sale of the property to Mary Wing, to wit, on the 5th day of April, 1883, the plaintiffs in this case, who now are, and then were, the heirs of Mary O. Smith, deceased, together with two or three other parties, who claimed some interest in it, instituted a suit in the circuit court of the city of St. Louis against Nathaniel C. Hudson, Mary Wing, and others, to set aside, cancel, and annul the deed to Mary Wing, and the judgment on which the same was founded, for reasons which were particularly set forth in the petition. E. T. Farrish, Esq., appeared as plaintiffs' attorney. This last-mentioned suit took the usual course of cases in court. The pleadings were perfected, depositions of parties taken, and finally, on April 8, 1884, the same was brought on for trial, submitted to the court, and decided adversely to the plaintiffs. The bill was dismissed. Afterwards the same was taken by appeal to the supreme court of Missouri, where, on November 14, 1887, the judgment of the circuit court was affirmed. See Fontaine v. Hudson, 93 Mo. 62, 5 S. W. 692. Apparently acquiescing in the judgment of the supreme court against them, the plaintiffs in that suit, who are also plaintiffs in this, by their attorney, E. T. Farrish, Esq., on the 19th day of November, 1887, instituted a suit in the circuit court of the city of St. Louis against the Schulenberg & Boeckler Lumber Company, charging, in substance, that said company, in the year 1879, was in possession of the lot of ground in controversy under and subject to an obligation on its part to pay the taxes assessed thereon as a part of the rental thereof; that said lumber company failed to pay such taxes, and as a result thereof the back-tax suit already considered was instituted for the enforcement of the state's lien for taxes for the year 1879, and that such suit resulted in a judgment against the property; that execution was issued thereon, and the property was sold to Mary Wing, and that by reason thereof (employing the language of the petition in the case against the lumber company) "said property, and the right and title of the plaintiffs thereto, became wholly lost to them." Such proceedings were had in this last-mentioned suit that on October 7, 1889, judgment was rendered for plaintiffs. Afterwards an appeal was duly prosecuted to the supreme court of Missouri, where, on March 14, 1892, the judgment of the lower court was affirmed. See Fontaine v. Lumber Co., 109 Mo. 55, 18 S. W. 1147. It appears that at the sale of the lot in controversy under execution in the state's suit for taxes, Mary Wing's bid was in excess of the amount of the judgment and costs in the case in the sum of $400.46, which, when paid, became a surplus in the hands of the sheriff, belonging to the owners of the lot. Twenty-one days after the affirmance of the judgment in the case instituted by the plaintiffs against N. C. Hudson, Mary Wing, et al., to set aside the tax deed to Mary Wing, to wit, on December 5, 1887, E. T. Farrish, Esq., attorney for the plaintiffs in that case, and who had just then instituted the suit for them against the Schulenberg & Boeckler Lumber Company, received such surplus from the sheriff, and appropriated it to the payment of attorney's fees earned and costs incurred in the several law-

suits already referred to. If it be true that Mr. Farrish was authorized to represent the plaintiffs in receiving this surplus proceeds of sale, such receipt by him will undoubtedly estop the plaintiffs from now asserting the invalidity either of the Mary Wing deed or any of the proceedings in the state suit for taxes which resulted in the deed. Even though these proceedings are void, and obnoxious to all the objections urged by the plaintiffs, yet, if plaintiffs elected to take the surplus proceeds of the sale, they are clearly estopped from asserting their invalidity. Nanson v. Jacob, 93 Mo. 331, 6 S. W. 246; Boogher v. Frazier, 99 Mo. 325, 12 S. W. 885; Clyburn v. McLaughlin, 106 Mo. 521, 17 S. W. 692; Fischer v. Siekmann, 125 Mo. 180, 28 S. W. 435.

It is contended by the plaintiffs that they knew nothing about the suit of the state against the unknown heirs of Mary O. Smith, or the suit of themselves (with others) against N. C. Hudson, Mary Wing, et al., to set aside the Wing deed, or the suit of themselves against the Schulenberg & Boeckler Lumber Company to recover damages for failure to pay taxes, by reason of which they lost the title to the lot in controversy, and that they knew nothing about Mr. Farrish representing them as attorney in these various suits, and especially knew nothing of his acts or conduct in receiving the surplus proceeds of sale arising from the Wing purchase. This contention, on its face, appears to me unreasonable. It involves the possibility of quite a large number of persons having their names employed in several suits, involving important litigation extending through the trial and appellate courts of Missouri for a period of more than 10 years, without their knowledge; it involves the stultification of a well-known and reputable attorney who appeared for them by name, and claimed to represent them in all these suits; it involves the improbability that the plaintiffs, who must be presumed to know that their land in St. Louis was subject to taxation, and to be sold for nonpayment of taxes, would deliberately abstain from giving it any attention, and thereby subject it to forfeiture. The plaintiff Lamar Fontaine, in testifying in this case, says he knew nothing about any of these suits; did not know that the lot had been sold for taxes; did not know of the suit brought by himself and the heirs of Mary O. Smith against Hudson and Wing, or of the suit brought by him and them against the Schulenberg & Boeckler Lumber Company. He further testifies that he had for a long time represented his wife and his sister-in-law, who are the other plaintiffs, in taking care of the lot in controversy. Under the circumstances, this ignorance of his seems improbable, and especially so in the light of the following facts in evidence: He gave his deposition in the two suits last referred to, and in the one against Hudson and Mary Wing testified, in the deposition given on the 12th day of May, 1884, as follows:

"I did not know that the lease of Schulenberg & Boeckler had expired, or that said lot 98 of the city of St. Louis had ever been sold for taxes, as I never received any notification that any taxes were due, or to be paid by the same."

If I had nothing else upon which to base my decision, I would certainly hold that no person could give such testimony as this, and not be aware, at the time he gave it, of the facts which he says he

82 F.—15

did not know before then. At any rate, a very stupid man would then, at the latest, have been put upon such inquiry in relation to the facts as to bind himself with a knowledge of everything which inquiry might impart. Again, I am not credulous enough to believe that an intelligent man, like Lamar Fontaine, would be giving his deposition in cases without knowing what the cases related to. It is claimed by him that a law firm of Hudson & Hudson, in Mississippi, were his and his wife's general attorneys, and that Mr. Farrish got his directions from them, and that they (Lamar Fontaine and wife) knew nothing about Mr. Farrish's employment for them, or nothing about his conduct of the cases for them. This possibly may be so in fact, but I cannot believe it. In depositions taken in this case, E. T. Farrish is referred to as a person who might have certain deeds of the plaintiffs that were called for. Why might E. T. Farrish have certain deeds that belonged to the plaintiffs? The plaintiffs' theory does not answer this question. Again, it is a significant fact that Lamar Fontaine alone testified to his want of knowledge of the receipt by Mr. Farrish of the surplus proceeds of the back-tax sale. It is to be noted in connection with this testimony that he is not a party in interest except the husband of one of the plaintiffs, who is one of the heirs of Mary O. Smith. The two women—his wife and sister-in-law, who are the real plaintiffs—do not testify at all in relation to any ignorance concerning the former litigation with respect to this property, or any ignorance with respect to Mr. Farrish's general authority, or his conduct in receiving this surplus money. The issue of estoppel was fairly presented by the defendants, and the plaintiffs must be presumed to have known it by the abstract of title filed in this case pursuant to the rules of this court. This abstract was filed April 8, 1897, and one of the links in defendants' title, as stated in the abstract, is as follows: "Testimony showing that plaintiffs took the surplus proceeds of the sale to Mary Wing, in cause 2,767, thereby ratifying and intending to ratify said sale, and to estop themselves from longer claiming title to said lot." It is incomprehensible to me that with such an issue presented, the meritorious plaintiffs in this case would not at least have testified that they personally knew nothing about this former litigation, or Mr. Farrish's acts, if such were the facts. Mr. Farrish himself, in his testimony, states that he represented Lamar Fontaine, Lemuella S. Fontaine, and Mary A. Brickell, who are the plaintiffs in this case, in the litigation in the circuit court of the city of St. Louis, already referred to. Notwithstanding the fact that he appears to have gotten his authority from the general attorneys of the plaintiffs in Mississippi, as shown by his cross-examination, I think it would be unfair and unjust to relieve the plaintiffs in this case from the effect of the conduct and acts of their ostensible (and I think real) representative. I shall therefore hold that the receipt by Mr. Farrish of the $400.46 surplus proceeds of the sale of the lot in question from the sheriff of the city of St. Louis, and the appropriation of the money for the benefit of the plaintiffs in this case, under the circumstances as disclosed in the evidence, estop the plaintiffs from denying the validity of the sale to Mary Wing. This will dispose of the case.

A great many objections were made at the trial to documentary evidence offered by the plaintiffs. Some deeds were objected to because of alleged uncertain and inadequate descriptions. Others were objected to because of alleged noncompliance with the requirements of the statutes of Missouri concerning acknowledgments. It may be that some of these objections were well taken. I have not considered them, because I dispose of the case, as already seen, more readily by a consideration of the outstanding title in the grantees of Mary Wing. Again, I notice that the answer of the defendants consists of a general denial only. If objection had been taken during the trial to the introduction of any evidence on the issue of estoppel, such objection might possibly have been sustained. But as the parties have taken a broad view of the case, introduced much evidence on both sides, on the issue of estoppel, and elaborately argued the same, the court takes them at their word, and passes upon this issue, among others. Certain it is that the plaintiffs were advised of the purpose of the defendants to rely upon estoppel as a defense, from the abstract of title, which distinctly pointed to evidence on that issue as a part of the defendants' chain of title. Both plaintiffs and defendants seemed to rely upon adverse possession as a factor in their titles. But I am of the opinion that neither party proved any such adverse possession. The case must therefore stand on the record title and on estoppel in pais as already stated, and judgment must be for the defendants.